UNITED STATES of America,
Plaintiff-Appellee,

v.

Jonathan Scott BALDWIN, et
al., Defendants.

In re Steven JACKSON,
Esquire, Appellant.

No. 84–5296.

United States Court of Appeals,
Eleventh Circuit.

Sept. 17, 1985.

Bruce Rogow, Ft. Lauderdale, Fla., for appellant.

Jon May, Sonia Escobio O'Donnell, Linda Collins-Hertz, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before RONEY and KRAVITCH, Circuit Judges, and THOMAS *, District Judge.

KRAVITCH, Circuit Judge:

Appellant, Steven F. Jackson, an attorney, appeals a judgment of criminal contempt, 18 U.S.C. § 401(3),[1] imposed upon him pursuant to Federal Rule of Criminal Procedure 42(a), for stating that he would not follow a court order, and then failing to appear to represent his client as ordered by the court. 592 F.Supp. 149 (S.D.Fla.1984). Finding that the court below properly found appellant in criminal contempt, we affirm.

## I. BACKGROUND

Appellant was the lawyer for Howard Jones, one of nine codefendants in a federal criminal case. On February 27, 1984, the district court held a calendar call in order to set the trial date. The parties estimated that the trial would last three to four weeks. At that time, the court inquired as to the dates in April or May when the lawyers for the various defendants would be unavailable. Jackson responded: "I don't have any vacation planned, but I do have a trial in New York, first week of

April. After that, I have no objections to any of the time in those two months." The judge set the trial to begin on Monday, April 16, 1984.

On April 12, 1984, the Thursday preceding the Monday on which the trial was to begin, Jackson's brother, Jeffrey Jackson, attended a pretrial hearing in his brother's place. Jeffrey Jackson orally advised the district court that Steven Jackson was ready for trial, but that he would not be available for trial Tuesday and Wednesday of the next week and Monday and Tuesday of the following week because he would be observing Passover, a Jewish holiday. The judge responded that he had never before received such a request, but that he always recessed court by sundown so that everyone could be home in time for Passover. Jeffrey Jackson said that he would so advise his brother.

On the following Monday, the day the trial was scheduled to begin, Jackson filed a written motion to stay all proceedings on that Tuesday and Wednesday and the following Monday and Tuesday. This motion was based on the free exercise clause of the first amendment. Jackson told the court that he was an observant Jew, that these days were the first and last two days of Passover which were equal in station to the highest of the Jewish holy days, and that it had been his practice since childhood to follow Jewish law that no work be done on those days. Jackson further stated that if the trial proceeded in his absence his client would be unduly prejudiced. The court denied Jackson's motion, but stated that the court would adjourn early for Passover. The court explained that with a nine-defendant, three to four week trial, the case could not be rescheduled at that

---

* Honorable Daniel H. Thomas, U.S. District Judge for the Southern District of Alabama, sitting by designation.

1. 18 U.S.C. § 401 provides:
   A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

   (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
   (2) Misbehavior of any of its officers in their official transactions;
   (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

point in time.[2] In response Jackson stated: "I just want to inform the court that with due deference to your ruling, I will not be here tomorrow and Wednesday or Monday and Tuesday of next week." The court warned Jackson that it would consider whether to send a marshal to bring him.

Following the lunch recess that day, the court asked Jackson's client, Jones, whether he would object to one of the other lawyers filling in on the days that Jackson was absent. Jones stated that he had no objection. However, after Jones conferred with Jackson, Jackson informed the court that he could not adequately represent Jones unless he was present throughout the proceedings, and that Jones would object to another lawyer filling in. The court then suggested that Jackson could get a transcript of the missed testimony. Jackson declined this offer. The other defendants' lawyers explored the possibility of one of them representing Jones. Again, Jackson found this alternative unacceptable. The court also offered to recess at four p.m. or anytime during the day that Jackson had to attend religious services. Jackson maintained that he could not work at all during these days.[3] The court specifically ordered Jackson to be at court the following day or he would be subject to contempt and criminal sanctions.

At around four o'clock that afternoon, after the jury had been partially selected, the court recessed so that any lawyers or jurors who wished to do so could return home for Passover. The court again told Jackson that it would not grant a stay given the size and expense of the trial. The court urged Jackson to appear and stated that it would consider a failure to attend in direct defiance of a court order. Jackson again advised the court that he would not attend the trial the next day:

JACKSON: With all due respect, Your Honor, I answer to a higher authority than this court in this matter and I will not be here tomorrow.

JUDGE: Well, act at your peril.

The next morning, the trial resumed and the jury selection continued. Jackson did not appear. The court found that Jackson had committed contempt twice on April 16 when he stated on two occasions that he would not obey the court's order to appear; the court also found that the contempt had been ratified that morning when Jackson failed to appear. The court stated that it would issue a certificate of contempt as soon as it was typed and would then give Jackson an opportunity to be heard. Next, the court addressed the problem of Jones' representation. After some delay, the court was able to find a lawyer who would agree to represent Jones at that late date. That evening, the court issued a certificate of contempt finding that Jackson had committed contempt twice on April 16 and that this contempt had continued on April 17. The certificate stated that the court did not doubt Jackson's representation of his religious practices and concluded:

> Despite what attorney Jackson thinks about this matter, it is not a case involving Mr. Jackson's exercising of his religious practices. It is a case of an officer of the court who failed to advise the court in ample time of his scheduled conflicts, especially after having assured the court when the trial date was selected that he had none in April or May. His defiance of the court's order denying his motion for stay constitutes contempt.

The order also set a hearing on the matter for April 19.

Jackson appeared on April 19, represented by counsel. The judge stated that he had filed the certificate of contempt, but would afford Jackson the opportunity to

---

2. The judge further told Jackson that he did not adjourn court for his own religious holidays and that he was not insensitive to Jackson's faith or the requirements of it.

3. Apparently, the judge contacted a Jewish lawyer and a Jewish judge to investigate the veracity of Jackson's religious claim. Although we do

not condone this type of *ex parte* investigation, the inquiry proved harmless as the court's ruling was premised upon the judge's acceptance of the existence and sincerity of Jackson's claimed religious need to refrain from work on the days in question.

explain his conduct at that time. Jackson's counsel argued that the court should vacate its certificate of contempt because the court had not afforded Jackson an opportunity to be heard prior to finding him in contempt as required by Federal Rule of Criminal Procedure 42(b), and because Jackson lacked the requisite criminal intent. In addition, Jackson's lawyer proffered evidence on the importance of the first and last two days of Passover, but was not permitted to introduce the testimony of two rabbis on this issue. The court found that such evidence was not relevant, as the court did not question Jackson's religious practice or his devotion to his religion.

Jackson testified next. He admitted that Passover occurred in March or April of each year. He further admitted that "perhaps" he had been "tarry in informing the court" that he could not be present during Passover, but stated that he had never before had a request for a continuance due to a religious holiday denied. The court stated that had Jackson filed the motion when he should have, it would have been easy to rearrange the court's calendar, but that his failure to do so fell pitifully short of his responsibility as a lawyer. The court then fined Jackson $1,000.

## II. SUMMARY CONTEMPT

The court chose to punish Jackson's actions summarily, pursuant to Federal Rule of Criminal Procedure 42(a)[4] rather than under Federal Rule of Criminal Procedure 42(b).[5] We recently described the difference between summary and nonsummary contempt in *Matter of Heathcock,* 696 F.2d 1362 (11th Cir.1983):

Historically, there are two types of criminal contempt: direct and indirect. Direct contempt is committed in the "actual presence of the court." *See Nye v. United States,* 313 U.S. 33, 61 S.Ct. 810, 85 L.Ed. 1172 (1941); *United States v. Marshall,* 451 F.2d 372 (9th Cir.1971). "Indirect contempt is contumacious behavior occurring beyond the eye or hearing of the court and for knowledge of which the court must depend upon the testimony of third parties or the confession of the contemnor." *United States v. Marshall,* 451 F.2d at 373. Both contempt classifications under Fed.R. Crim.P. 42(a) and (b) require two separate procedures for trying and punishing contumacious behavior. Direct contempt provides for summary disposition; indirect contempt requires notice and hearing. *United States v. Willett,* 432 F.2d 202, 204 (4th Cir.1970); 8B Moore's Federal Practice. ¶ 42.04[1] (2d ed. 1981).

*Id.* at 1365 (footnote omitted). "The power to summarily hold an individual in direct criminal contempt operates to vindicate the authority of the court and stands as a bulwark against disorder and disruption in the courtroom." *Sandstrom v. Butterworth,* 738 F.2d 1200, 1208–09 (11th Cir. 1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 787, 83 L.Ed.2d 781 (1985) (footnote omitted). There are two justifications for summary contempt: "First, because in a direct

**4.** Fed.R.Crim.P. 42(a) provides:
*Summary Disposition.* A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record.

**5.** Fed.R.Crim.P. 42(b) provides:
*Disposition Upon Notice and Hearing.* A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. The defendant is entitled to a trial by jury in any case in which an act of Congress so provides. He is entitled to admission to bail as provided in these rules. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent. Upon a verdict or finding of guilt the court shall enter an order fixing the punishment.

contempt the judge has observed the contemptuous act, there is 'no need of evidence or assistance of counsel before punishment.' *Cooke v. United States,* 267 U.S. 517, 534, 45 S.Ct. 390, 394, 69 L.Ed. 767 (1925). Second, the maintenance of courtroom decorum sometimes necessitates quick and forceful action. *Id."* *Id.* (footnote omitted). Because summary contempt allows the court to punish the contemnor without benefit of numerous procedural protections, we have determined that it is only appropriate in narrowly defined circumstances. *Matter of Heathcock,* 696 F.2d at 1365; *United States v. Brannon,* 546 F.2d 1242, 1248 (5th Cir.1977).[6]

█ Appellant argues that summary contempt was inappropriate in this case for numerous reasons. First, appellant claims that Rule 42(a) is "limited to those severe circumstances . . . where someone is so disruptive to the court in the middle of the trial that the court must invoke *extraordinary* authority to keep the proceedings moving." Jackson claims that his conduct did not rise to this level. This argument need not detain us for long. In *United States v. Wilson,* 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975), a case concerning two witnesses who refused to answer questions during the course of a criminal trial, the Supreme Court announced that the contemptuous actions need not be delivered in a rude manner in order to fall within Rule 42(a). The Court stated:

Respondents' refusals to answer, although not delivered disrespectfully, plainly fall within the express language of Rule 42(a), and constitute contemptuous conduct. Rule 42(a) was never intended to be limited to situations where a witness uses scurrilous language, or threatens or creates overt physical disorder and thereby disrupts a trial. All that is necessary is that the judge certify that he "saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court."

*Id.* at 314–15, 95 S.Ct. at 1805–06.

█ Appellant's next argument, that the disturbance caused by his absence was minor, and thus unworthy of summary contempt, is also unpersuasive.[7] The disruption caused by Jackson's conduct was severe. During the first two days of trial, the court spent a significant amount of time dealing with Jackson's refusal to attend the trial and represent his client.[8] The members of the jury venire, the lawyers for the other defendants, and the defendants, especially Jackson's client,[9] were greatly inconvenienced at considerable public expense—in addition to the fact that the trial judge was both inconvenienced and had his authority undermined by appellant's refusal to follow a direct court order. Like *Wilson,* this case involved an ongoing trial, and Jackson's behavior caused the trial to come to a halt.[10] Jackson's "refus-

---

**6.** The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**7.** At oral argument before this court, appellant had changed his position somewhat and his counsel stated that Jackson's actions had caused a "gross inconvenience."

**8.** On April 16, the court was consumed with trying to work out an acceptable alternative whereby the trial could continue the following day without Jackson. On April 17, the court tried to find alternative counsel.

**9.** Jones stated to the court on April 17:
Your honor, I was embarrassed about what happened yesterday. My attorney, Mr. Jackson, did not confer with me on the motion he made about this holiday. I had no idea what

he was doing. I am real anxious to get this over with and go on to trial. I don't know too much about the law but realize my life's at stake and I'm worried and I'm scared.
Yesterday you recommended I speak to a few attorneys about representation so I have spoken to several. I don't have enough money, I can't afford to get another one and at that late hour, most didn't want to get involved.
I need another attorney. I'd like to get another attorney. I am willing to do whatever the Court suggests. I am in your hands, Your Honor.

**10.** Appellant stated that his client's rights could not be adequately protected in his absence, thus he has admitted that his presence was necessary for the continuation of the trial. The trial proceeded once substitute counsel was appointed to represent Jones. Although the effectiveness of

als were contemptuous of judicial authority because they were intentional obstructions of court proceedings that literally disrupted the progress of the trial and hence the orderly administration of justice." *Wilson,* 421 U.S. at 315–16, 95 S.Ct. at 1806–07 (footnote and citation omitted). As in *Wilson,* time was "of the essence" given the ongoing nature of the proceedings. *Id.* at 319, 95 S.Ct. at 1808. The *Wilson* Court noted the severity of this kind of disturbance:

> Trial courts ... cannot be expected to dart from case to case on their calendars any time a witness who has been granted immunity decides not to answer questions. In a trial, the court, the parties, witnesses, and jurors are assembled in the expectation that it will proceed as scheduled. Here the District Judge pointed out this problem when defense counsel asked for a continuance; he said: "I think we cannot delay this trial. I cannot delay it. I have many other matters that are equally important to the people concerned in those cases which are following."

*Id.* at 318–19, 95 S.Ct. at 1807–08. We see no reason to treat an attorney who fails to appear to ask questions more leniently than a witness who refuses to answer questions. Moreover, the case before us presents an even more compelling factual scenario than *Wilson* because of the number of people involved and the inevitable problems that would arise from an attempt to reschedule or even delay this trial.

■ The court below found that appellant's two statements on April 16 that he would not follow the court's order constituted contemptuous conduct and that this contempt "continued" when appellant failed to appear on April 17. Appellant argues that his failure to appear cannot be punished summarily because it did not occur "in the actual presence of the court." Fed.R.Crim.P. 42(a). We agree with appellant that the failure to appear ordinarily

does not subject one to summary contempt. *See, e.g., United States v. Onu,* 730 F.2d 253 (5th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 182, 83 L.Ed.2d 116 (1984); *Thyssen, Inc. v. S/S Chuen On,* 693 F.2d 1171 (5th Cir.1982); *In re Allis,* 531 F.2d 1391 (9th Cir.), *cert. denied,* 429 U.S. 900, 97 S.Ct. 267, 50 L.Ed.2d 185 (1976); *United States v. Delahanty,* 488 F.2d 396 (6th Cir.1973). *But see In re Gates,* 478 F.2d 998 (D.C.Cir.1973); *In re Niblack,* 476 F.2d 930 (D.C.Cir.), *cert. denied,* 414 U.S. 909, 94 S.Ct. 229, 38 L.Ed.2d 147 (1973). As explained in *Thyssen,* the essential reason for not summarily punishing a failure to appear "is that although the facts of the absence and the scheduling of the hearing are within the knowledge and presence of the court, nevertheless, '[A]bsence, (tardiness) *alone* is not contempt. The reasons for the default are important.'" 693 F.2d at 1174–75 (citing *In re Allis,* 531 F.2d at 1392). The protection of Rule 42(b) is usually necessary because the judge normally does not know why the alleged contemnor did not appear. *Id.* at 1175; *see also In re Oliver,* 333 U.S. 257, 275–76, 68 S.Ct. 499, 508–09, 92 L.Ed. 682 (1948) (if judge must depend upon others for knowledge of essential elements, due process requires notice and a fair hearing); *Delahanty,* 488 F.2d at 398 ("While the absence of Appellants was obvious to the Court, the reasons for their absence were not."). In the present case, however, there was no such need to inform the court of the reason for Jackson's absence, as Jackson had already told the court why he would not be present on April 17, and that he was refusing to obey a court order. *See Thyssen,* 693 F.2d at 1175 (it is possible that where counsel has advised the court that he will not appear for a certain reason, the procedures of Rule 42(b) need not be followed); *In re Niblack,* 476 F.2d at 931–33 (lawyer who was nearly two hours late subject to summary contempt where he had been warned by the court numerous times about

---

the substitute counsel is not at issue, we note that Jones, apparently a minor defendant in the trial, was the only defendant not convicted, but

instead released because of the jury's inability to reach a verdict on his innocence or guilt. Appellant's Br. at 18, n. 5.

being on time).[11] Thus, the circumstances in this case render Rule 42(a) an appropriate method of punishing appellant's subsequent failure to appear. We stress, however, that this is a narrow ruling dependent upon the appellant's prior refusal to obey the court's order and his explanation of why he would not appear. Mere failure to appear, without prior explanation, should not be punished summarily.

■ Appellant next contends that his statements on April 16 did not constitute contempts because they were neither identified as contempts nor punished at the time of their occurrence. Rather, appellant argues, on April 16 the court merely threatened to find him in contempt if he failed to appear the next day. We disagree with appellant's analysis. Appellant's statements that he would not follow the court's order were contemptuous acts. The Supreme Court's words in *Wilson* are applicable here:

> The face-to-face refusal to comply with the court's order itself constituted an affront to the court, and when that kind of refusal disrupts and frustrates an ongoing proceeding, as it did here, summary contempt must be available to vindicate the authority of the court as well as to provide the recalcitrant witness with some incentive to testify. *In re Chiles*, 22 Wall. 157, 168, 22 L.Ed. 819 (1875). Whether such incentive is necessary in a

particular case is a matter the Rule wisely leaves to the discretion of the trial court.

421 U.S. at 316–17, 95 S.Ct. at 1806–07 (footnotes omitted). This is not a situation where the court waited until after the proceedings were over to find defendant in contempt summarily.[12] *See Taylor v. Hayes*, 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974) (due process denied where final adjudication of contempt for counsel's actions during trial took place summarily after trial had concluded); *Groppi v. Leslie*, 404 U.S. 496, 92 S.Ct. 582, 30 L.Ed.2d 632 (1972) (legislative resolution citing petitioner for contempt for conduct on floor of State Assembly, passed two days after allegedly contemptuous acts and without notice or opportunity to answer, violates due process); *United States v. Brannon*, 546 F.2d 1242 (5th Cir.1977) (summary contempt inappropriate where not imposed upon witness who refused to answer questions until after closing arguments).[13] Here, the court acted upon appellant's April 16 statements the very next day, when the statements were ratified by Jackson's failure to appear, and at a time when the court was still suffering from Jackson's actions because it had not yet found someone to represent Jones. *See Wilson*, 421 U.S. at 319, 95 S.Ct. at 1808. The court properly acted to vindicate its authority at that time.[14]

---

**11.** We note that Jackson was given a subsequent opportunity to explain why he was not present. At this hearing, which took place on April 19, the court, in effect, reopened the contempt charge. Had Jackson's absence been for a reason other than that announced on April 16, undoubtedly the court would have modified its judgment accordingly. As the Supreme Court stated in reference to a similar situation: "Although he imposed sentence before hearing the contemnors, the trial judge would, no doubt have modified his action had their statements proved persuasive. Modification of contempt penalties is common where the contemnor apologizes or presents matter in mitigation." *Groppi v. Leslie*, 404 U.S. 496, 506 n. 11, 92 S.Ct. 582, 588 n. 11, 30 L.Ed.2d 632 (1972) (in reference to *Sacher v. United States*, 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717 (1952)) (citation omitted).

**12.** The Supreme Court has, however, sanctioned summary contempt at the end of trial under

appropriate circumstances. *Sacher v. United States*, 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717 (1952).

**13.** In addition, unlike the situation in *Groppi* and *Brannon*, Jackson was given notice that he was subjecting himself to contempt and he had the opportunity to address the court on the matter prior to being held in contempt.

**14.** In *Sandstrom v. Butterworth*, 738 F.2d 1200 (11th Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 787, 83 L.Ed.2d 781 (1985) we explained that the Supreme Court, in reviewing cases of summary contempt, "has weighed the specific due process right implicated in the circumstances of the case against the accepted justifications for summary contempt procedures." *Id.* at 1209. Thus, the Court has been reluctant to deprive the accused of a jury trial and impose contempt summarily when the contempt or con-

■ Finally, appellant argues that a hearing was necessary prior to his being held in contempt in order to provide him with an opportunity to show the religious importance of his absence. Such a showing was irrelevant, however, given the fact that the court accepted appellant's allegations of religious law and his sincerity in following his religion. Moreover, appellant was not held in contempt because he chose to exercise his religious beliefs; rather, the contemptuous acts flowed from appellant's failure to give the court adequate notice of his inability to appear. Passover is not an unpredictable event; it occurs in the spring of each year. Appellant had a duty to inform the court sufficiently before the trial in order to assert his first amendment rights.[15] If the court, given adequate notice of appellant's religious convictions had, nevertheless, scheduled trial for the first and last two days of Passover, we would be faced with a first amendment question. In the present case, we are not.[16] This situation is similar to one that recently confronted the Fifth Circuit when a state legislator, who was acting as defense counsel in a criminal trial, did not appear for trial because he was attending a legislative session. *United States v. Onu,* 730 F.2d 253 (5th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 182, 83 L.Ed.2d 116 (1984). The Fifth Circuit found that the importance of appellant attending the legislative session was irrelevant. The court stated:

> tempts were serious and involved a total of more than six months' confinement, and when the judgment and sentencing for the contempt were postponed until after the proceeding. *Id.* at 1209–11. Here, these factors weigh in favor of upholding the summary contempt. Jackson was not imprisoned, and was held in contempt during the course of the trial.
>
> In addition, although we find appellant's conduct was actionable under Rule 42(a), we also note that the court allowed appellant a full opportunity to be heard on April 19. *See* note 11, *supra.* Contrary to appellant's assertion, this hearing was not violative of due process merely because the two rabbis were not permitted to testify, as the court accepted Jackson's claim that religious law forbade work on the days in question. Thus, except for the fact that this hearing was held after Jackson was held in contempt, it complied with the requirements of Rule 42(b). *See Onu,* 730 F.2d at 256–57 (Rule

Requiring a lawyer to adhere to the proper orders of a federal court does not threaten legislative integrity. Senator Washington was not called suddenly to his legislative duties, the federal case was not precipitately assigned for trial. From the time he sought to enter an appearance in the case, in March, Washington knew or should have known of the trial date and of the scheduled, regular legislative session. He had ample time to communicate with the court in person and to seek an alternate trial date.

*Id.* at 257. *Cf. United States v. Lespier,* 558 F.2d 624, 627–28 (1st Cir.1977) (lawyer's failure to appear because he was at a political conference, without taking "the smallest step of giving notice earlier," would have been "clearly punishable as criminal contempt"). Likewise, Jackson had more than ample opportunity to give the court notice of his religious needs.

### III.  INTENT

■ Jackson argues that he lacked the requisite intent for criminal contempt because his actions were "premised upon" his religious beliefs. We disagree. "Criminal contempt is established when it is shown that the defendant is aware of a clear and definite court order and willfully disobeys the order." *United States v. Rylander,* 714 F.2d 996, 1001–02 (9th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 2398, 81 L.Ed.2d 355 (1984). As stated in *Sykes v.*

> 42(b) does not require rigorous and formalistic application; absent prejudice or unfairness, failure to follow Rule 42(b) will not result in reversal of a contempt judgment); *see also Wolfe v. Coleman,* 681 F.2d 1302, 1307–08 (11th Cir. 1982); *In re Allis,* 531 F.2d at 1393.

**15.** We need not determine the exact contours of what would constitute sufficient notice. Suffice it to say that four days oral notice and a motion filed on the first day of trial were not sufficient in view of the court's specific questions more than two and a half months earlier regarding what days counsel would be available for trial.

**16.** We note that there is every indication that the trial judge would have accommodated Jackson's religious needs had he been given proper notice. In addition, the court made every effort, short of halting the trial, to accommodate Jackson despite the inadequate notice.

*United States,* 444 F.2d 928 (D.C.Cir.1971) (distinguishing knowing failure to appear from lapse of memory or confusion as to trial date), "An essential element of [criminal contempt] is an intent, either specific or general, to commit it. By definition, contempt is a *'willful* disregard or disobedience of a public authority.'" *Id.* at 930. In criminal contempt, willfulness "means a deliberate or intended violation, as distinguished from an accidental, inadvertent, or negligent violation of an order." *Falstaff Brewing Corp. v. Miller Brewing Co.,* 702 F.2d 770, 782 (9th Cir.1983).

In the present case, Jackson knew that his motion to stay the proceedings had been denied and that he had been told he must appear on April 17. The court twice warned him that if he failed to appear he would be subject to contempt. Jackson knew that he was telling the court that he would not obey its order on April 16, and he knew he was disobeying the court on April 17. Jackson's motive for disobeying the court is irrelevant as far as a finding of intent is concerned, rather it is the knowing failure to obey the court that forms the requisite intent.

For the foregoing reasons, the judgment of the district court is AFFIRMED.