UNITED STATES of America, Plaintiff-Appellee,

v.

Fernando NUNEZ, et al., Defendants.

In re Samuel I. BURSTYN, Esq., Appellant.

No. 85–5502.

United States Court of Appeals, Eleventh Circuit.

Oct. 14, 1986.

John F. Evans, Zuckerman, Spaeder, Taylor & Evans, G. Richard Strafer, Coral Gables, Fla., William P. Cagney, III, Miami, Fla., for appellant.

Benedict P. Kuehne, Neal R. Sonnett, Bierman, Sonnett, Shohat & Sale, P.A., Miami, Fla., for amicus curiae NACDL.

Leon B. Kellner, U.S. Atty., Jon May, Thomas Blair, Linda Collins-Hertz, Sonia O'Donnell, Anne R. Schultz, Nancy L. Worthington, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before FAY, Circuit Judge, HENDERSON * and NICHOLS **, Senior Circuit Judges.

* See Rule 3(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Philip Nichols, Jr., Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

PER CURIAM:

Samuel I. Burstyn, an attorney, appeals from an order finding him in contempt for failure to appear in court on the first day of the trial of his client, Fernando Miguel Nunez.

## I.

The appellant, together with co-counsel Michel Ociacovski, an associate of Mr. Burstyn's law firm, represented Fernando Miguel Nunez who, along with three other individuals, was indicted for various narcotics related offenses. The case was initially assigned to the Honorable Alcee L. Hastings in the United States District Court for the Southern District of Florida. Following lengthy pretrial proceedings and several continuances, the last two of which were requested by defendant Nunez, the case was reassigned to the Honorable G. Ernest Tidwell of the United States District Court for the Northern District of Georgia, who was sitting in the Southern District of Florida by designation during the weeks of June 10 and June 17, 1985.

Judge Tidwell scheduled a status conference for Tuesday, June 11. At the status conference, Judge Tidwell asked counsel if they could begin trial the next day because he wanted to be certain to finish the following week as he was scheduled to return to Georgia on Saturday, June 22. The prosecutor indicated that the government would prefer not to proceed until Monday, June 17 because he needed time to reassemble his witnesses and to resubpoena one witness. In addition, he stated that he would be out of town on Friday, June 14. Mr. Burstyn announced that he was ready for trial, but indicated that he would prefer to have a few days time to rest, having just completed another trial, and to work with Mr. Ociacovski in completing their preparation for what would be Mr. Ociacovski's "first federal criminal trial." Moreover, Mr. Burstyn also indicated that he would have to reassemble witnesses, and possibly revalidate subpoenas.

After some discussion, Judge Tidwell gave counsel the option of striking the jury on Thursday, June 13 and then recessing on Friday, or striking the jury on Monday, June 17 and continuing on through the week. Mr. Burstyn responded by requesting that the trial be scheduled for Monday, giving his "full assurance" that they would be ready to proceed at that time. The court agreed to this request, stating: "[s]o I would expect in this case that every defendant and every lawyer to [sic] be here ready to hit the ground running at 9:00 a.m., Monday morning."

On Monday, June 17, all counsel, except Mr. Burstyn, were present. Mr. Ociacovski appeared on behalf of defendant Nunez and announced that he was standing in for Mr. Burstyn who would return the next day. The court thereupon asked Mr. Ociacovski whether he was going to try the case. He responded: "That's a difficult question. I have never tried a jury case. I was going to try it with Mr. Burstyn. That was my client's understanding, however, he [Mr. Burstyn] won't be here until tomorrow morning." Although Mr. Burstyn couldn't be present, Mr. Ociacovski explained, they had not sought a continuance because prior continuances had been granted in the case. He further explained that this had been discussed with Nunez over the weekend, and that Nunez understood that Mr. Burstyn would be absent. Although Nunez "wasn't happy about it," he had agreed to have Mr. Ociacovski represent him on the first day of the proceedings.

The court, not satisfied with these responses, directed Mr. Ociacovski to confer with Nunez, stating: "I am particularly interested in whether or not he is willing to waive Mr. Burstyn's presence and is satisfied to go to trial in his absence today." After conferring with Nunez out of the court's presence, Mr. Ociacovski returned and informed the court that his client would "prefer" that Mr. Burstyn be present. The court concluded that under the circumstances, the trial could not go forward that day. Accordingly, the court sua sponte continued the trial until 9:00 a.m. the following day, and directed that

Mr. Burstyn personally appear for trial at that time.

On Tuesday, June 18, the trial was again delayed by Mr. Burstyn's failure to arrive until approximately 9:15 a.m. The court began the proceedings by asking Mr. Burstyn why he had been absent the previous day. Mr. Burstyn informed the court that he had had a long standing deposition scheduled in Chicago, and that he had specifically planned to have Mr. Ociacovski argue the pre-trial motions and select the jury. Mr. Burstyn also explained that he had discussed this matter with Nunez on at least two prior occasions, and that he "really thought that by having Michel [Ociacovski] present it wouldn't impede the progress of the matter at all." When asked why he had not notified the court during the status conference of his inability to appear, Mr. Burstyn stated that he had not remembered his commitment in Chicago until the following Wednesday or Thursday. He also admitted that, at the time, he did not think it necessary to contact the judge, the judge's staff, or the government, concerning this pre-existing commitment. Mr. Burstyn reiterated that he hadn't expected that his absence would impede the court, and indeed, that he "was really trying to accommodate the Court's tight schedule by not asking for a one day continuance."

The court thereupon announced that it was holding Mr. Burstyn in contempt, stating:

> Your conduct has made it impossible for me to try the case. I indicated I have to be back in Atlanta on Monday. It is clear—if it wasn't last week it is clear from the announcement yesterday, that either the case can't be or wouldn't be tried within a week. I have no alternative but to consider your conduct as flagrant and contemptuous and I find you in contempt and sentence you to 15 days incarceration in the custody of the Attorney General.

The court also stated that the situation was "even more aggravated" because the delay in the trial was, in part, at Mr. Burstyn's request, and made in an attempt to accommodate him. After denying requests for bond or for a stay of the court's order, Mr. Burstyn was incarcerated and the trial indefinitely continued.

Later that day, the court filed a written opinion and order outlining the events which led to the court's finding of contempt. The court summarized Mr. Burstyn's objectionable conduct as follows:

> assuring the Court during the status conference on Tuesday, June 11, 1985, that he would be ready for trial on June 17, 1985, when in fact he was not; ... failing to appear for trial on Monday, June 17, 1985, as ordered in the above-styled matter and as scheduled by the Court; ... absenting himself from the Court on Monday, June 17, 1985, without in any way informing the Court prior thereto and obtaining the permission of the Court to absent himself.

This conduct, the court concluded, "obstructed and disrupted the orderly conduct of the Court's business [and] constituted an aggravated, willful, and intentional contempt of the Court." In response to the court's written order, Mr. Burstyn filed a notice of appeal.

At 4:00 p.m. that same day, a hearing was held before Judge Tidwell for the purpose of presenting mitigating evidence and to consider a stay of the court's order or, in the alternative, to set bond. During the hearing, however, it was pointed out that unless Mr. Burstyn withdrew his notice of appeal, the court was without jurisdiction to consider any evidence in mitigation. Accordingly, the court continued the matter to allow Mr. Burstyn an opportunity to consider withdrawing the notice of appeal. In the meantime, Mr. Burstyn was released from custody on $500 bond.

At a subsequent hearing held on Thursday, June 20, Mr. Burstyn, represented by counsel, announced that he would not withdraw his notice of appeal. In so doing, Mr. Burstyn indicated that the proceedings implicated a possible double jeopardy issue, and that withdrawal of the notice of appeal might result in the waiver of any double

jeopardy rights which had attached. In response, the government argued that by his election, Mr. Burstyn was waiving the right to any future evidentiary hearings.[1] In view of the fact that Mr. Burstyn refused to withdraw his notice of appeal, no argument in mitigation was heard as the district court was without jurisdiction to consider such evidence. Bond was continued in the amount which had been set by the court on June 18.

## II.

■ A federal court has the power to vindicate its authority and safeguard its own processes by imposing criminal contempt sanctions.[2] *See* 18 U.S.C. § 401 (1982). The procedures a court must follow in utilizing its contempt powers are set forth in Fed.R.Crim.P. 42.[3] Rule 42 outlines the two alternative procedures to be used, depending on whether the contemptuous behavior occurred in the presence of the court, or not.

Rule 42(a) permits the use of summary procedures where the alleged misconduct is "committed in the actual presence of the court." Fed.R.Crim.P. 42(a). Subsection (a) therefore "fills 'the need for immediate penal vindication of the dignity of the court' and permits the court to act swiftly to stop conduct which amounts to intentional obstruction of court proceedings." *United States v. Brannon*, 546 F.2d 1242, 1248 (5th Cir.1977)[4] (quoting *Cooke v. United States*, 267 U.S. 517, 536, 45 S.Ct. 390, 395, 69 L.Ed. 767 (1925)). In view of the fact that subsection (a) allows a court to impose punishment "without benefit of counsel, notice, jury, indictment, or presentation of a defense," however, its application has been narrowly interpreted. *In re Heathcock*, 696 F.2d 1362, 1365 (11th Cir. 1983). "Thus, the power to impose summary contempt exists only where there is 'compelling reason for an immediate remedy....'" *Brannon*, 546 F.2d at 1248 (footnote omitted) (quoting *United States v. Wilson*, 421 U.S. 309, 318, 95 S.Ct. 1802, 1807, 44 L.Ed.2d 186 (1975)).

Rule 42(b) sets forth "the normal procedure" which is to be used under most circumstances. *Harris v. United States*, 382 U.S. 162, 165, 86 S.Ct. 352, 354, 15 L.Ed.2d 240 (1965). This subsection punishes

---

1. On appeal, the parties have again raised the issues of double jeopardy and waiver. We find these arguments meritless, and accordingly do not discuss them herein.

2. Although not specified in the court's order, it is clear that the appellant was held in criminal, and not civil, contempt.

   [T]he ultimate test for determining the civil or criminal character of a contempt order is the 'the apparent purpose of the trial court in issuing the contempt judgment,' a punitive purpose or one 'designed to vindicate the authority of the court' establishing the criminal nature of the order, while a coercive or remedial purpose characterizes a civil contempt. *Thyssen, Inc. v. S/S Chuen On*, 693 F.2d 1171, 1173–74 (5th Cir.1982) (quoting *Smith v. Sullivan*, 611 F.2d 1050, 1053 (5th Cir.1980)).

3. Rule 42 of the Federal Rules of Criminal Procedure reads as follows:
   **Rule 42. Criminal Contempt.**
   (a) **Summary Disposition.** A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts

and shall be signed by the judge and entered of record.

   (b) **Disposition Upon Notice and Hearing.** A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. The defendant is entitled to a trial by jury in any case in which an act of Congress so provides. He is entitled to admission to bail as provided in these rules. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent. Upon a verdict or finding of guilt the court shall enter an order fixing the punishment.

4. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc), we adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

" 'contumacious behavior occurring beyond the eye or hearing of the court and for knowledge of which the court must depend upon the testimony of third parties or the confession of the contemnor.' " *Heathcock*, 696 F.2d at 1365 (quoting *United States v. Marshall*, 451 F.2d 372, 373 (9th Cir.1971)). Accordingly, punishment pursuant to subsection (b) requires certain procedural safeguards, including notice and hearing. *See* Fed.R.Crim.P. 42(b).

In *United States v. Baldwin*, 770 F.2d 1550, 1555 (11th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1636, 90 L.Ed.2d 192 (1986), we stated that an attorney's failure to appear in court does not ordinarily subject him to summary contempt.[5] Similarly, the majority of circuits which have considered the issue have concluded that counsel's tardiness or absence cannot be characterized as contempt in the presence of the court. *See, e.g., United States v. Onu*, 730 F.2d 253, 255–56 (5th Cir.), *cert. denied, sub nom. Washington v. U.S.*, 469 U.S. 856, 105 S.Ct. 182, 83 L.Ed.2d 116 (1984); *In re Allis*, 531 F.2d 1391, 1392 (9th Cir.), *cert. denied,* 429 U.S. 900, 97 S.Ct. 267, 50 L.Ed.2d 185 (1976); *United States v. Delahanty*, 488 F.2d 396, 397 (6th Cir. 1973); *Jessup v. Clark*, 490 F.2d 1068, 1072 (3d Cir.1973); *In re Lamson*, 468 F.2d 551, 552 (1st Cir.1972) (per curiam); *United States v. Willett*, 432 F.2d 202, 205 (4th Cir.1970) (per curiam). *But see In re Gates*, 478 F.2d 998, 1000 (D.C.Cir.1973) (per curiam); *In re Niblack*, 476 F.2d 930, 933 (D.C.Cir.) (per curiam), *cert. denied,* 414 U.S. 909, 94 S.Ct. 229, 38 L.Ed.2d 147 (1973). Although the fact of the absence is within the knowledge and presence of the court, *Onu*, 730 F.2d at 256, "[t]he import of these cases is that the contempt consists not in the absence from the courtroom, but in the reasons for the attorney's presence elsewhere...." *In re Allis*, 531 F.2d at 1392. Thus, "[c]ontempt results only from the lack of a good reason for the lawyer's absence [and] [n]o contempt has been committed if the absence is excusable because it was occasioned by good cause." *Onu*, 730 F.2d at 256 (footnote omitted).

Since the reasons for an attorney's absence are usually unknown to the court, it is ordinarily improper to employ summary contempt procedures for failure to appear. *Thyssen, Inc. v. S/S Chuen On*, 693 F.2d 1171, 1175 (5th Cir.1982). In some instances, however, where the reason for the absence or tardiness is known to the court, "it may be that all the procedures of Rule 42(b) need not be followed." *Id.* (footnote omitted). In the present case, it is clear from the record that Judge Tidwell was aware of the reasons for Mr. Burstyn's absence before adjudging him in contempt. *See supra,* pp. 1261–62. There is, however, some dispute as to whether defendant Nunez experienced an eleventh hour change of heart with respect to being represented by the appellant's co-counsel, Mr. Ociacovski, on the first day of the proceedings. The timing of defendant Nunez' decision is important because it is relevant to the issue of foreseeability and the likelihood that Mr. Burstyn's absence would make it impossible for the trial court to proceed as scheduled. This is exactly the kind of situation where the appellant can benefit from the opportunity to obtain counsel, prepare a defense and present witnesses, such as defendant Nunez, whose allegedly unexpected preference for Mr. Burstyn's presence precipitated the contempt finding. *Cf. In re Lamson*, 468 F.2d at 552 ("These are the kinds of events which impress upon us that a

5. In *United States v. Baldwin*, 770 F.2d 1550 (11th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1636, 90 L.Ed.2d 182 (1986), the district court summarily adjudged an attorney in contempt for failure to appear in court, and we affirmed. In that case, however, the attorney had advised the judge, in advance, that he would not obey the court's order to appear and represent his client. In affirming the district court, we stated:

In the present case ... there was no such need to inform the court of the reason for Jackson's absence, as Jackson had already told the court why he would not be present ... and that he was refusing to obey a court order. Thus, the circumstances in this case render Rule 42(a) an appropriate method of punishing appellant's subsequent failure to appear.

*Id.* at 1555–56 (citations omitted) (footnote omitted).

failure to appear on time may often only be explained by witnesses who may not be immediately available or by more than three hours preparation by the offender.").

Accordingly, we vacate the appellant's conviction and remand for proceedings consistent with Rule 42(b).[6] In so doing, we are not unmindful of the often difficult task confronting district court judges in expediting the cases before them. It is hardly surprising that Judge Tidwell became frustrated with Mr. Burstyn's conduct in this matter. Common courtesy dictates that Mr. Burstyn should have notified the court of his inability to appear on behalf of his client. This is especially true here because Mr. Burstyn led the court to believe he would be present, and he was well aware of the fact that Judge Tidwell's time in the Southern District of Florida was limited.

### III.

■ Having concluded that remand is in order, we now address the appellant's subsidiary argument that he is entitled to have that proceeding conducted by a different judge. Rule 42(b) provides that "[i]f the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent." Fed. R.Crim.P. 42(b). Ordinarily, the mere failure of an attorney to appear does not involve such "disrespect to or criticism of a judge" as would require the judge to disqualify himself from the proceedings. *See In re Lamson*, 468 F.2d 551, 553 (1st Cir. 1972). Moreover, the cases cited by the appellant in support of his position are not persuasive.

In *Sandstrom v. Butterworth*, 738 F.2d 1200, 1213 (11th Cir.1984), *cert. denied*, 469 U.S. 1109, 105 S.Ct. 787, 83 L.Ed.2d 781 (1985), for example, we found that the record was "replete with evidence that the trial judge had a pre-existing and very strongly held dislike for the petitioner." We described the objectionable conduct in that case as follows:

At different points during the trial, the judge referred to the petitioner as 'rude and nasty,' and as 'acting like an animal;' the judge repeatedly said he was 'sick of' the petitioner. He referred to petitioner's law partner as a 'little creep,' and said that he was 'sick of' him. Shortly before finding petitioner guilty of contempt and sentencing him, the trial judge said that for ten years the petitioner had had a 'nauseating effect' upon him and every other court in the courthouse.

*Id.* Accordingly, we concluded "that the judge was incapable of representing the impersonal authority of law necessary for fair adjudication," and held that any further proceedings be conducted before a different judge. *Id.* at 1214.

Similarly, in *Taylor v. Hayes*, 418 U.S. 488, 503, 94 S.Ct. 2697, 2705–06, 41 L.Ed.2d 897 (1974) (quoting *Mayberry v. Pennsylvania*, 400 U.S. 455, 464, 91 S.Ct. 499, 504, 27 L.Ed.2d 532 (1971)), the Supreme Court held that a judge should have disqualified himself from contempt proceedings involving an attorney, where " 'marked personal feelings were present on both sides' and . . . the marks of 'unseemly conduct [had] left personal stings.' " In that case, the judge

cautioned petitioner against 'putting on a show' and added that 'if you give him an inch, he'll take a mile. I might as well sit on him now.' On another occasion when petitioner asserted that his purpose was to defend his case, [the judge] replied, 'I'm not sure.' When petitioner remarked that he had five months wrapped up in the case, [the judge] retorted that '[b]efore it's over, you might have a lot more than that.'

*Id.* at 502, 94 S.Ct. at 2705 (citations to the record omitted). In addition, prior to sentencing, the judge accused the petitioner of putting "on 'the worst display' he had seen in many years at the bar—'[a]s far as a lawyer is concerned, you're not.' " *Id.* (citation to the record omitted). Thereafter, the judge refused to allow the petitioner an opportunity to speak, sentenced him to four

---

**6.** In view of the fact that we remand this matter for further proceedings, we do not reach the issues of intent and the length of the sentence which were raised by Mr. Burstyn on appeal.

and one-half years in jail, and later disbarred him from practicing law in his court in the future.

By contrast, in the present case, the record is devoid of any evidence of animosity. At most, Judge Tidwell expressed legitimate frustration with Mr. Burstyn's conduct. His frustration was certainly understandable in view of the fact that Mr. Burstyn's actions made it impossible to proceed to trial as scheduled. We have no doubt, however, as to Judge Tidwell's ability to hear this matter fairly and impartially, and conclude that he need not disqualify himself from future proceedings. It may well be that since he was a visiting judge this matter will be handled by a regular member of the district court. We leave that to the judges involved.

## CONCLUSION

For the foregoing reasons, the order of the district court is vacated, and this matter is remanded for further proceedings consistent with this opinion.

VACATED and REMANDED.