**In re Douglas W. McDONALD**

**No. 86–8342.**

United States Court of Appeals,
Eleventh Circuit.

June 19, 1987.

P. Gerald Cody, Jr., Cornelia, Ga., Victoria D. Little, Decatur, Ga., for appellant.

Mary Jane Stewart, U.S. Attys. Office, Julie E. Carnes, Atlanta, Ga., for appellee.

Before FAY and KRAVITCH, Circuit Judges, and MORGAN, Senior Circuit Judge.

PER CURIAM:

Douglas W. McDonald, an attorney, appeals from a judgment of criminal contempt imposed upon him in a summary proceeding pursuant to 18 U.S.C. § 401 (1982), Fed.R.Crim.P. 42(a). The conduct that was determined to be contemptuous occurred during McDonald's cross-examination of a witness at trial. The district court entered a written order of public reprimand and directed that a copy of the contempt citation be filed with the clerk's office and furnished to the State Bar of Georgia. Finding that the district court properly held McDonald in criminal contempt, we affirm.

## I. BACKGROUND

McDonald was the lawyer for Martha Wehunt, one of two co-defendants in a federal criminal case. Martha Wehunt was named in only one count of a three count indictment. The indictment charged: (1) Max Wehunt, Martha Wehunt's husband, and Freddie Gaddis with conspiracy to possess marijuana with intent to distribute in violation of 21 U.S.C. § 846; (2) Max Wehunt with forcible assault of an officer of the Drug Enforcement Administration using a deadly and dangerous weapon in violation of 18 U.S.C. §§ 111 and 1114, and (3) Martha Wehunt with forcible assault of an officer of the Drug Enforcement Administration using a deadly and dangerous weapon in violation of 18 U.S.C. §§ 111 and 1114. A jury trial commenced on April 15, 1986, in the United States District Court for the Northern District of Georgia.

Gerald Minor, the Government's first witness, testified only about the facts relating to the drug conspiracy charge in count one. During his testimony he made no mention of Martha Wehunt. After the Government completed its direct examina-

tion, Robert Thompson, the attorney for Max Wehunt, cross-examined Minor extensively. Thompson's cross-examination of Minor covered his role as a drug dealer on the street, his use of drugs, his income from drugs, his jewelry business, his agreement to cooperate with the authorities, pending State court charges, and the set up for the arrest of Max Wehunt.

After Thompson concluded the cross-examination of Minor, the court asked if there was any further cross-examination. McDonald, even though he represented Martha Wehunt who was not implicated in the drug charge, expressed his desire to cross examine Minor. This colloquy followed:

> THE COURT: In what respect? I don't believe he has testified one iota as to the third count of the indictment.
>
> MR. MCDONALD: If Your Honor please, Mrs. Wehunt has asked that I ask him some questions since she's in a joint trial with her husband about his credibility.[1]
>
> THE COURT: Go ahead, but don't repeat a thing that has gone on. If you ask anything—he has not testified about the third count, but I will permit you to ask questions. If you want to prove and establish that he hasn't, you may ask those questions, but if you are just going to reiterate what Mr. Thompson has said, then I am going to sustain objections to it.

The court made it clear that McDonald was not to reiterate any questions that Thompson had asked Minor.

The third question McDonald posed on cross-examination of Minor concerned facts underlying the drug charge. McDonald asked whether Martha Wehunt was personally involved in "anything you had to do with Freddie Gaddis?"[2] The court sustained the Government's objection. McDonald's next question repeated basically the question the court just disallowed. The Government objected and the court again sustained the objection.

McDonald requested permission to proffer the list of questions he wanted to ask the witness, Minor. The court granted permission and sent the jury to the jury room. McDonald made his proffer which included questions relating to the drug count. The court didn't rule on each specific question proffered. Rather, it told McDonald that some questions were proper and some were not and that rulings would be made as the trial went along.[3] The court reiterated that McDonald could ask questions to elicit whether Minor had knowledge of events underlying count three, but admonished McDonald not to get into questions relating to the drug offense. The court stated that, "about half or three-quarters of what you indicated are rehashing things he [Thompson] went over or are dealing with narcotics. She is not charged with drugs, and I don't intend to allow you to go into the drug business."

Thereafter, McDonald resumed his cross-examination of Minor. Within the first few questions McDonald ventured into an area previously probed by Thompson and was again directed by the court that the matter was not to be delved into twice. The court reminded McDonald that it was "being very lenient in allowing [him] to examine [Minor] when he didn't testify against [his] client." McDonald once again, however, began questioning Minor on matters relating to the drug transaction. The court sustained the Government's objection again reminding McDonald that he was not to try the drug case. The court stated, "Mr. McDonald, you are dealing with Mr. Thompson's case now ... Let's restrict yourself to defending your client." McDonald asked one question relating to his client's charges only to return, on the very next

---

1. We fail to see how a client's recommendations can serve as a basis for counsel's strategic legal decisions.

2. Freddie Gaddis was named as Max Wehunt's co-conspirator in count one of the indictment.

3. We recognize that the better procedure under these circumstances would have been for the Judge to rule on the specific questions proffered. However, after reviewing the record it is clear that the Judge instructed McDonald not to cross-examine Minor on any matter relating to the drug charge.

question, to matters relating to the drug transaction involving the other defendant. The Government objected and this colloquy followed:

THE COURT: You just insist upon trying the drug case. Unless you represent to me that the two of you are jointly representing the two defendants, I sustain the objection.

MR. MCDONALD: No, sir. I represent Mrs. Wehunt.

THE COURT: If you represent her, I sustain the objection.

MR. MCDONALD: Mr. Minor, on October 8th, 1985, approximately how much money did you allegedly owe for drugs you had purchased or say you purchased from Freddie Gaddis or Max Wehunt?

MS. STEWART: Objection, Your Honor.

THE COURT: I sustain the objection. Ladies and Gentlemen, retire to the jury room.

(Thereupon the Jury retired from the courtroom)

THE COURT: Your conduct is contemptuous and in violation of the directions of this court. Do you wish to respond to that?

MR. MCDONALD: If I can have time to do so, Your Honor, if it please the court.

THE COURT: And it is not the first time in this trial or in any trial you have ever been in, Mr. McDonald. You are defiant to this court's orders and the ruling of this court, and I have made it clear to you that that was improper, and I consider it contemptuous and unethical. I will deal with it at the conclusion of the case.

The court gave McDonald an opportunity to respond to the charge outside the presence of the jury. McDonald attempted to justify his persistent questioning on what he considered to be an improper ruling on the scope of cross-examination. The court promptly reminded McDonald that if the court had ruled improperly McDonald could have appealed the alleged erroneous ruling rather than defiantly continuing to ask questions relating to the drug charge in the presence of the jury.[4] McDonald pleaded with the court not to find him in contempt. The court responded, "we will do that later" and stated that it would tolerate no more defiance. McDonald did not question the witness further.

After the jury returned its verdict,[5] and before the court adjourned, the District Judge publicly reprimanded McDonald pointing out the conduct throughout trial that led to the court's action. The court explained to the jury that it was "[a] question of conduct before the court, and when the court consistently rules a particular way and a lawyer consistently pursues a subject matter the court has ruled out, it must be dealt with." The court ordered that the citation of contempt be filed with the clerk's office and furnished to the State Bar of Georgia. This appeal followed.

## II. DISCUSSION

The role of criminal contempt is to protect the institutions of our government and enforce their mandates. *Bloom v. Illinois*, 391 U.S. 194, 201, 88 S.Ct. 1477, 1481, 20 L.Ed.2d 522 (1968). A federal court may impose criminal sanctions pursuant to 18 U.S.C. § 401 (1982),[6] to vindicate

---

4. The district court has broad discretion in making rulings on the scope of cross-examination. Such a ruling is subject to reversal only for abuse of discretion which is clearly not present in this case. *United States v. Darwin*, 757 F.2d 1193, 1202 (11th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 896, 88 L.Ed.2d 930 (1986). Nevertheless, McDonald argues that the District Judge erred in curtailing his cross-examination of the witness, Minor. We absolutely agree with the district court that the proper path for McDonald to take for an alleged improper ruling is the appellate process.

5. Martha Wehunt was found not guilty of count three and Max Wehunt was found guilty of counts one and two.

6. 18 U.S.C. § 401 states:

A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

(2) Misbehavior of any of its officers in their official transactions;

its authority and safeguard it own processes. *United States v. Wilson*, 421 U.S. 309, 316, 95 S.Ct. 1802, 1806, 44 L.Ed.2d 186 (1975); *Bloom*, 391 U.S. at 204, 88 S.Ct. at 1483; *United States v. Turner*, 812 F.2d 1552, 1562 (11th Cir.1987); *United States v. Nunez*, 801 F.2d 1260, 1263 (11th Cir. 1986); *Sandstrom v. Butterworth*, 738 F.2d 1200, 1208–09 (11th Cir.1984), *cert. denied*, 469 U.S. 1109, 105 S.Ct. 787, 83 L.Ed.2d 781 (1985); *In re Heathcock*, 696 F.2d 1362, 1365 (11th Cir.1983).

■ The court chose to punish McDonald's conduct summarily, pursuant to Federal Rule of Criminal Procedure 42(a). Rule 42(a) provides that "[a] criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record." Rule 42(a) provides the court with the authority to immediately vindicate the dignity of the court and allows the court to act quickly to stop conduct which amounts to intentional obstruction of court proceedings. *Bloom*, 391 U.S. at 209–10, 88 S.Ct. at 1486; *Nunez*, 801 F.2d at 1263; *United States v. Baldwin*, 770 F.2d 1550, 1553 (11th Cir. 1985), *cert. denied, sub nom,* —— U.S. ——, 106 S.Ct. 1636, 90 L.Ed.2d 182 (1986). Because summary contempt permits the court to impose punishment on the contemner without ʻthe benefit of procedural safeguards, it is only appropriate in narrowly defined circumstances. *Nunez*, 801 F.2d at 1263; *Baldwin*, 770 F.2d at 1554; *Sandstrom*, 738 F.2d at 1209; *Heathcock*, 696 F.2d at 1365. When deciding the proper scope of summary contempt authority a balance between the specific due process right implicated in the circumstances of the case and the accepted justifications for summary contempt proceedings must be

reached. *Sandstrom*, 738 F.2d at 1209. The district court has the discretion to decide whether to resort to the Rule 42(a) summary procedure. *Turner*, at 1568; *Baldwin*, 770 F.2d at 1556. We will only reverse the certification of contempt, therefore, if the district court abused its discretion. For the following reasons we hold that the district court did not abuse its discretion.

■■ The essential elements of criminal contempt are that the court entered a lawful order of reasonable specificity, it was violated, and the violation was wilful. *Turner*, at 1563. Whether the order is reasonably specific is a question of fact and "must be evaluated in the context in which it is entered and the audience to which it is addressed." *Id.* at 1565. In criminal contempt, willfulness "means a deliberate or intended violation, as distinguished from an accidental, inadvertent, or negligent violation of an order." *Baldwin*, 770 F.2d at 1558 (quoting *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 782 (9th Cir.1983)). Each of these elements must be proven beyond a reasonable doubt in order to determine guilt and impose punishment.[7] *Turner*, at 1563.

■ The certification issued by the district court made findings as to each of these elements. The Certificate of Contempt stated that McDonald, "in open court and in the present of the court, refuse[d] to obey and did consistently disobey the orders and directions of this court regarding certain evidentiary matters." [8] The orders directed to attorney McDonald were reasonably specific in the context in which they occurred. The district court repeatedly warned McDonald not to pursue questioning regarding the drug charge. His client was not implicated, in any way, with the drug offense, yet McDonald continued to venture into the forbidden area. We have acknowledged that the better route

---

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

**7.** While the district court did not explicitly state that it was applying the proper standard of proof in reaching its findings, we conclude that

it did since it was bound to do so. *Turner*, at 1563.

**8.** The written order detailed the evidentiary rulings at issue regarding the cross-examination of the witness on matters relating to the drug count.

for the district court to take would have been to rule on each proffered question, but we find the record replete with unheeded specific admonitions. The court gave McDonald an opportunity to respond. McDonald's wilful violations of the court's orders were evidenced by his own justification to the charges. McDonald stated that Mrs. Wehunt "asked me to please ask some questions on her behalf, and that's why I did it, because I wanted to make sure these [sic] being husband and wife, and she consented to it, and that's why I got up."

The district court did not abuse its discretion by finding McDonald in summary contempt pursuant to Rule 42(a). In fact the court's summary finding that McDonald was in contempt was necessary to vindicate its authority and return order in the courtroom. It was only after the court announced that McDonald's conduct was contemptuous and in defiance of the court's orders that McDonald refrained from disobeying the court's orders.

McDonald's conduct created an actual obstruction of justice, *Turner*, at 1568, as the face-to-face refusal to comply with the court's order disrupted and frustrated the ongoing proceedings. *United States v. Wilson*, 421 U.S. 309, 316, 95 S.Ct. 1802, 1806, 44 L.Ed.2d 186 (1975). The trial was interrupted several times so that the court could admonish McDonald and the jury was sent to the jury room after McDonald persisted in asking questions that were ruled improper.

McDonald argues that since punishment was delayed until the jury returned its verdict, three days after the citation of contempt, the district court should have followed the procedure set forth in Fed.R. Crim.P. 42(b) which provides notice and a hearing. We disagree.[9] Under these circumstances, especially where the offender is an attorney representing a client on trial, summary punishment may be postponed until the conclusion of the proceedings. *Taylor v. Hayes*, 418 U.S. 488, 498, 94 S.Ct.

2697, 2703, 41 L.Ed.2d 897 (1974); *Sacher v. United States*, 343 U.S. 1, 11, 72 S.Ct. 451, 456, 96 L.Ed. 717 (1952); *Baldwin*, 770 F.2d at 1556 n. 12. *Cf.*, *Groppi v. Leslie*, 404 U.S. 496, 92 S.Ct. 582, 30 L.Ed.2d 632 (1972) (legislative resolution citing petitioner for contempt for conduct on floor of State Assembly passed two days after alleged conduct occurred and without notice or opportunity to be heard is violative of due process); *Mayberry v. Pennsylvania*, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971) (If judge is target of extreme insolence and insult, he must pass contempt proceeding to another judge if original judge does not adjudicate and punish contemptuous act during trial). Here, the court deferred the announcement of a public reprimand citing McDonald's contemptuous conduct, until the end of the trial in order to avoid tainting the jury. When the court publicly reprimanded McDonald before adjourning the proceedings, it acted properly in vindicating its authority.

## III. CONCLUSIONS

For the foregoing reasons the district court's order is AFFIRMED.

---

9. Since we have concluded that resort to Fed.R. Crim.P. 42(a) was proper in this case, we need not address McDonald's argument regarding whether he is entitled to have a proceeding conducted by a different judge. Our affirming the use of Rule 42(a) also negates McDonald's

argument that he was entitled to a jury trial which he would not be entitled to in any event as a finding of petty contempt punished by a public reprimand can be tried before a judge. *Taylor v. Hayes*, 418 U.S. 488, 495, 94 S.Ct. 2697, 2701, 41 L.Ed.2d 897 (1975).