**SECURITIES AND EXCHANGE COMMISSION, Plaintiff–Appellee,**

v.

**James SIMPSON, Defendant–Appellant,**

**and**

**George E. Becker, Appellant.**

**Nos. 88–2426, 88–2427.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 7, 1989.

Decided Sept. 20, 1989.

Patricia C. Holland, Lori T. Vardas, Steven A. Ramirez, S.E.C., Chicago, Ill., Daniel L. Goelzer, Denise O'Brien, Faith D. Ruderfer, S.E.C., Washington, D.C., for plaintiff-appellee.

Max Cohen, Cohen & Thiros, Merrillville, Ind., George E. Becker, Chicago, Ill., for James Simpson, Richard Holiusa, Donald Swanson, Certified Investment Companies, Certified Commodities, Inc., Certified Precious Metals, Inc., and Levitan Inv.

George Becker, Chicago, Ill., pro se.

Stephen Becker, Chicago, Ill., for George E. Becker.

Before FLAUM, RIPPLE and KANNE, Circuit Judges.

RIPPLE, Circuit Judge.

This appeal grows out of an action against James Simpson initiated by the Securities and Exchange Commission (SEC). On July 15, 1988, Mr. Simpson, acting on the advice of his attorney, George E. Becker, failed to appear at a hearing to show cause why he should not be held in civil contempt for failing to comply with a permanent injunction entered in the SEC action. At the hearing, the district court fined Mr. Simpson $5,000 for violating an

order of the court by failing to appear at the show cause hearing and fined Mr. Becker $5,000 for advising Mr. Simpson to disobey the court's order. When imposing the fines at the hearing, the district court characterized them as Rule 11 sanctions. However, in an order entered on July 19, 1988 denying the appellants' Emergency Motion to Reconsider Rule 11 Sanctions and reaffirming its imposition of the fines, the district court characterized the fines as sanctions for civil contempt imposed pursuant to 18 U.S.C. § 401. We now reverse and remand.

## I.

### Background

#### A. *Facts*

The SEC filed the underlying action against Mr. Simpson giving rise to this appeal on April 25, 1988. It alleged that Mr. Simpson and four corporations with which he was involved violated the registration and antifraud provisions of the federal securities laws. The SEC sought to enjoin the defendants' activities as continuing violations of the securities laws and also sought an accounting of all funds acquired by the defendants through the sales of securities to investors.

On May 5, 1988, Mr. Simpson entered into a consent order permanently enjoining further conduct in violation of the federal securities laws and ordering him and the four corporate defendants to provide the desired accounting within thirty days. The thirty-day time limit expired on June 6, 1988, without any accounting having been made. Mr. Simpson subsequently indicated to the SEC that he would not provide an accounting because he had been advised by counsel that producing the accounting would violate his fifth amendment privilege to be free from self-incrimination. *See* Tr. of July 15, 1988 at 18–19.[1] The SEC then filed a motion for an order to show cause why Mr. Simpson should not be held in civil

contempt for failing to make the required accounting. On June 24, 1988, the district court entered an order scheduling the show cause hearing for July 15, 1988. This order required that Mr. Simpson appear in the courtroom "to show cause why the defendant Simpson and the corporate defendants should not be adjudged in civil contempt of [the district court] for failure to comply with the Court's Orders of May 5, 1988." R.43. Mr. Becker had notice of the SEC's motion and the court's June 24 order, but filed no objection to the order before the July 15 show cause hearing.

On July 13, 1988, two days before the scheduled show cause hearing, the SEC served a subpoena for Mr. Simpson's attendance at the hearing on a receptionist working for the group of attorneys with whom Mr. Becker shared office space. Mr. Becker received the subpoena that evening. According to the SEC, Mr. Simpson went into hiding some time before this lawsuit was filed, and, the SEC claims, it served the subpoena on Mr. Becker because Mr. Simpson was not receiving mail at his Munster, Indiana address. Mr. Becker claimed he did not know Mr. Simpson's current mailing address.

Mr. Becker appeared at the show cause hearing on July 15 without Mr. Simpson. When the court asked Mr. Becker why Mr. Simpson was not in the courtroom, Mr. Becker revealed that he had instructed Mr. Simpson not to appear at the hearing. He also stated, however, that Mr. Simpson was supposed to be five minutes from the courtroom. Mr. Becker told the court that he "advised his client not to attend the hearing, based on his belief that the Subpoena [served on him by the SEC] should be quashed because it was improperly served and because [Mr. Becker] advised Simpson that he would seek a reconsideration of the Court's June 24, 1988 Order." R.48 (July 19, 1988 Order) at 5. The appellants maintained that the subpoena was improperly served since it was served at Mr. Becker's office rather than on Mr. Simpson personal-

---

1. In addition to being a defendant in the SEC's civil action, Mr. Simpson has been informed by the Federal Bureau of Investigation and the United States Attorney's Office that he is under investigation by a grand jury in the Northern District of Indiana. *See* Tr. of July 15, 1988 at 19.

ly. At this point, the district court "suggest[ed]" that Mr. Becker summon Mr. Simpson to the hearing and adjourned the hearing for ten minutes for that purpose. *See* Tr. of July 15, 1988 at 21. The court, however, did not at that time impose sanctions, or threaten the imposition of sanctions, on Mr. Becker.

When Mr. Becker and Mr. Simpson arrived back in the courtroom, the district court asked Mr. Becker whether he had instructed his client not to attend the hearing and whether he had ever advised his client to be present at the hearing as scheduled. Even though Mr. Becker had received and read the court's June 24 order, he admitted that he had not told Mr. Simpson to be present at the hearing until the court directed him to do so that morning. The court then imposed a $5,000 fine on Mr. Becker. The district court next asked Mr. Simpson if he knew that the June 24 order required his presence at the show cause hearing. He informed the court that he did know that he was supposed to be in attendance at the hearing and also stated that "[o]n the advice of my attorney I was made aware that I should be within five minutes." Tr. of July 15, 1988 at 25. The court then imposed a $5,000 fine on Mr. Simpson. Mr. Becker's fine was to be paid by 5:00 p.m. that day (Friday, July 15), while Mr. Simpson's fine was to be paid by 10:00 a.m. on Monday, July 18. The district court denied an oral motion to stay the fines. The court also stated that it believed that both Mr. Becker and Mr. Simpson had "delayed" the "administration of justice" and "made a mockery of this Court and its orders," *id.* at 26, and stated that it intended to refer the

hearing transcript to the Illinois Disciplinary Committee. *Id.*[2] As noted earlier, the district court cited Rule 11 as the authority for the imposition of these fines.

The hearing had commenced at 11:00 a.m. on July 15. By the time Mr. Simpson had been summoned to the courtroom and the district court had imposed sanctions on both Mr. Simpson and Mr. Becker, it was 11:40 a.m. The court thus recessed the hearing until 2:00 p.m. that same day. At that time, the hearing resumed and the court proceeded to hear argument on the SEC's motion to show cause. Because Mr. Becker argued that requiring Mr. Simpson to prepare an accounting would violate his fifth amendment privilege against self-incrimination, the district court ordered the hearing continued and ordered the parties to file briefs discussing the fifth amendment issue within ten days. *See* Tr. of July 15, 1988 at 47.[3]

### B. *District Court Order*

In its July 19, 1988 order denying the appellants' Emergency Motion to Reconsider Rule 11 Sanctions, the district court explained that the appellants' "deliberate and willful disregard" of its June 24 order justified the imposition of sanctions. However, the court now held that Rule 11 was not a proper vehicle for the imposition of sanctions in this case. Rather, it noted that it did have discretion to impose fines for civil contempt on the appellants pursuant to 18 U.S.C. § 401.[4]

In concluding that contempt sanctions were warranted in this case, the court first rejected Mr. Becker's explanation for his advice to his client. As noted above, Mr.

---

2. Mr. Becker's office is located in Chicago, Illinois.

3. In an order entered on October 21, 1988, the district court held that Mr. Simpson's fifth amendment privilege against self-incrimination precluded it from finding him in contempt for failing to provide an accounting as required by its order of May 5, 1988. The court therefore denied the SEC's motion for an order to show cause why Mr. Simpson should not be held in contempt. *See* Appellants' Reply Br., App. at 9.

4. Section 401 provides that:

A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

(2) Misbehavior of any of its officers in their official transactions;

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

18 U.S.C. § 401.

Becker instructed Mr. Simpson not to appear at the hearing since he intended, at the hearing itself, to seek a reconsideration of the court's June 24 order. The court explained that persons who refuse to obey a court order generally risk contempt sanctions even if the order is ultimately found to be incorrect. *See* R.48 at 8 (citing *Maness v. Meyers*, 419 U.S. 449, 458–60, 95 S.Ct. 584, 590–92, 42 L.Ed.2d 574 (1975)). Indeed, noted the district court, a court order " 'must be obeyed by the parties until it is reversed by orderly and proper proceedings.' " *Maness*, 419 U.S. at 459, 95 S.Ct. at 591 (quoting *United States v. Mine Workers*, 330 U.S. 258, 293, 67 S.Ct. 677, 695, 91 L.Ed. 884 (1947)). Mr. Becker received the June 24 order requiring Mr. Simpson to appear three weeks before the scheduled hearing; nothing prevented Mr. Becker from filing a motion for reconsideration sometime prior to the hearing itself. Thus, the district court explained that Mr. Becker was being fined "for his willful and blatant disrespect of this Court when he intentionally advised his client to disobey this Court's Order which resulted in the delay of the administration of justice." R.48 at 9.

The court also noted that there was nothing ambiguous about its June 24 order. Mr. Becker and Mr. Simpson both were aware that Mr. Simpson had been ordered to appear in court on July 15. Their own admissions in open court provided clear and convincing evidence of contempt. The court believed that contempt sanctions, therefore, were proper in order to "enforce the Court's June 24th Order, of which both parties had knowledge, and admittedly disregarded." R.48 at 10.

Although the district court recognized that a hearing is generally required before imposing contempt sanctions to allow a party to contest a finding of contempt, it concluded that no additional hearing was required in this case. The court stated that it had, "in effect, conduct[ed] a mini-hearing," *id.*, by making specific inquiries of the appellants regarding their knowledge of the June 24 order and their actions with respect to that order. The court explained that, in its view, the appellants had been given a reasonable opportunity to explain or defend their actions, and they admitted that they had willfully disregarded the order. Thus, the court concluded that "another hearing would not facilitate this Court's determination of the issue of civil contempt," R.48 at 11, and imposed $5,000 fines on Mr. Becker and Mr. Simpson. Both appellants timely filed a notice of appeal from this order.

## II.

### Analysis

#### A. *Appropriate Characterization of the Sanction*

In its July 19 order, the district court described the fines imposed in this case as sanctions for civil contempt. Before addressing the merits of this appeal, however, we must first consider the proper characterization of the sanctions imposed on the appellants by the district court.[5] As the district court recognized, Rule 11 of the Federal Rules of Civil Procedure was not an appropriate vehicle for the imposition of the sanctions at issue in this case. Rule 11 sanctions are to be imposed by a district court when a pleading, motion, or other paper is signed in violation of the rule; the conduct for which Mr. Becker and Mr. Simpson were sanctioned did not involve

---

**5.** *See Shillitani v. United States*, 384 U.S. 364, 368–70, 86 S.Ct. 1531, 1534–35, 16 L.Ed.2d 622 (1966). In *Shillitani*, the Supreme Court considered the "character and purpose" of the punishment imposed by the district court to determine whether civil contempt or criminal contempt was at issue before considering the propriety of the challenged sanction; the Court explained that it was not bound by the fact that both the district court and the court of appeals had called the petitioners' conduct criminal con-

tempt. *See also United States v. Powers*, 629 F.2d 619, 626 (9th Cir.1980) (District court confusion regarding the types of contempt "raise[s] the possibilities that the notice of the contempt charge was inadequate and that the contemnor was unable to properly prepare a defense. To address these possibilities we determine from the 'totality of the circumstances' what form of contempt proceeding was proper and what form was actually used.").

the improper signing of a paper filed in the district court.

■ Nor do we believe that the sanctions imposed in this case can be characterized as penalties for civil contempt. As the Supreme Court recently noted in *Hicks v. Feiock*, 485 U.S. 624, 108 S.Ct. 1423, 1429, 99 L.Ed.2d 721 (1988), the distinction between civil and criminal contempt is a question of "long standing." In drawing the distinction, *Hicks* emphasizes that:

the critical features are the substance of the proceeding and the character of the relief that the proceeding will afford. "If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court." *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911). The character of the relief imposed is thus ascertainable by applying a few straightforward rules. If the relief provided is a sentence of imprisonment, it is remedial if "the defendant stands committed unless and until he performs the affirmative act required by the court's order," and is punitive if "the sentence is limited to imprisonment for a definite period." *Id.*, at 442, 31 S.Ct. at 498. If the relief provided is a fine, it is remedial when it is paid to the complainant, and punitive when it is paid to the court, though a fine that would be payable to the court is also remedial when the defendant can avoid paying the fine

simply by performing the affirmative act required by the court's order.

*Id.* 108 S.Ct. at 1429–30. In short, "[a]lthough the purposes that lie behind particular kinds of relief are germane to understanding their character," *id.* at 1431, "conclusions about the purposes for which relief is imposed are properly drawn from an examination of the character of the relief itself." *Id.* at 1432. "The critical feature that determines whether the remedy is civil or criminal in nature is … whether the contemnor can avoid the sentence imposed on him, or purge himself of it, by complying with the terms of the original order." *Id.* at 1431 n. 7. A criminal contempt proceeding is characterized by the imposition of an unconditional and determinate sentence for the purpose of punishment or deterrence. *See id.* at 1430–31 & n. 6; *Shillitani v. United States*, 384 U.S. 364, 370 n. 5, 86 S.Ct. 1531, 1535 n. 5, 16 L.Ed.2d 622 (1966).[6] Under this definitional scheme, the penalties imposed by the district court in this case clearly constitute sanctions for criminal contempt. The court unconditionally ordered the appellants to pay their fines and no compliance by them in the future could release them from this obligation.[7]

### B. Criminal Contempt

#### 1. Governing Principles

Rule 42 of the Federal Rules of Criminal Procedure governs the procedures to be used in imposing the criminal contempt sanctions authorized by 18 U.S.C. § 401.[8]

---

**6.** The Supreme Court in *Hicks* also noted that: [T]he conditional nature of … punishment renders the relief civil in nature because the contemnor "can end the sentence and discharge himself at any moment by doing what he had previously refused to do." … [T]he unconditional nature of … punishment renders the relief criminal in nature because the relief "cannot undo or remedy what has been done nor afford any compensation" and the contemnor "cannot shorten the term by promising not to repeat the offense." 108 S.Ct. at 1430 (quoting *Gompers*, 221 U.S. at 442, 31 S.Ct. at 499) (citations omitted).

**7.** An order holding a party in civil contempt is not a "final decision" under 28 U.S.C. § 1291. *Powers v. Chicago Transit Auth.*, 846 F.2d 1139, 1141 (7th Cir.1988). Because the district court's

July 19 order actually imposed sanctions for criminal contempt, rather than civil contempt, the order is a "final decision" appealable under 28 U.S.C. § 1291. *See id.*

**8.** Rule 42. Criminal Contempt

(a) Summary Disposition. A criminal contempt may be punished summarily if the judge certifies that the judge saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record.

(b) Disposition Upon Notice and Hearing. A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and

Rule 42(a) provides that criminal contempt may be punished summarily if the court certifies that it saw or heard the contumacious conduct and that the contempt was committed in the actual presence of the court.[9] In all other cases, the court must comply with the "normal procedure," *see Harris v. United States*, 382 U.S. 162, 165, 86 S.Ct. 352, 354, 15 L.Ed.2d 240 (1965), specified in Rule 42(b), which requires that the defendant be provided with notice and a hearing.

■ As we explained in *United States v. Moschiano*, 695 F.2d 236, 250–51 (7th Cir. 1982), *cert. denied*, 464 U.S. 831, 104 S.Ct. 110, 78 L.Ed.2d 111 (1983), Rule 42(a) has been narrowly construed. The Supreme Court has stated that the summary proceedings of Rule 42(a) are "reserved 'for exceptional circumstances.'" *Harris*, 382 U.S. at 164, 86 S.Ct. at 354 (quoting *Brown v. United States*, 359 U.S. 41, 54, 79 S.Ct. 539, 548, 3 L.Ed.2d 609 (1959) (Warren, C.J., dissenting)). In addition, the Court has noted that the use of summary contempt proceedings is inappropriate where there is no compelling need for an immediate remedy or time is not of the essence. *See United States v. Wilson*, 421 U.S. 309, 318–19, 95 S.Ct. 1802, 1807–08, 44 L.Ed.2d 186 (1975). Rather, Rule 42(a) provides the appropriate remedial tool to be used when disobedience to a court's lawful orders threatens to cause the breakdown of ongoing proceedings. *Id.* at 319, 95 S.Ct. at 1808; *see also id.* ("summary punishment may be necessary where a 'refusal [is] . . . an open, serious threat to orderly procedure'") (quoting *Harris*, 382 U.S. at 165, 86 S.Ct. at 354).

■ This narrow reading of Rule 42(a) implements the principle, repeatedly emphasized by the Supreme Court, that "only '[t]he least possible power adequate to the end proposed' should be used in contempt cases." *Wilson*, 421 U.S. at 319, 95 S.Ct. at 1808 (quoting *Anderson v. Dunn*, 19 U.S. (6 Wheat.) 204, 231, 5 L.Ed. 242 (1821)). We have adhered to that principle by holding that "resort to summary disposition of criminal contempt under Rule 42(a) is permissible only when the express requirements of the rule are met *and* when there is a 'compelling reason for an immediate remedy' or time is of the essence." *Moschiano*, 695 F.2d at 251 (emphasis supplied); *see also In re Jafree*, 741 F.2d 133, 135 (7th Cir.1984); *United States v. Lowery*, 733 F.2d 441, 446–48 (7th Cir.), *cert. denied*, 469 U.S. 932, 105 S.Ct. 327, 83 L.Ed.2d 264 (1984). When no compelling reason for an immediate remedy is evident or time is not of the essence, the conduct in issue is indirect contempt—"the exclusive remedy for which is provided by Rule 42(b)." *In re Jafree*, 741 F.2d at 135.

The procedures outlined in Rule 42(b) constitute the "normal procedure," *see Harris*, 382 U.S. at 166, 86 S.Ct. at 355, to be followed in imposing criminal contempt sanctions because the notice and hearing requirements of that rule serve important ends. The Supreme Court has stated "time and again that reasonable notice of a charge and an opportunity to be heard in defense before punishment is imposed are 'basic in our system of jurisprudence.'" *Groppi v. Leslie*, 404 U.S. 496, 502, 92 S.Ct. 582, 586, 30 L.Ed.2d 632 (1972) (quoting *In*

---

place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. The defendant is entitled to a trial by jury in any case in which an act of Congress so provides. The defendant is entitled to admission to bail as provided in these rules. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or

hearing except with the defendant's consent. Upon a verdict or finding of guilt the court shall enter an order fixing the punishment. Fed.R.Crim.P. 42.

9. 18 U.S.C. § 401 recognizes two types of contempt: direct and indirect. Contumacious conduct committed in the actual presence of the court, which can be punished summarily, is known as direct contempt. *See, In re Jafree*, 741 F.2d 133, 135 (7th Cir.1984) (citing *In re Heathcock*, 696 F.2d 1362, 1365 (11th Cir.1983)). All other contumacious conduct is characterized as indirect contempt. *Id.*

*re Oliver,* 333 U.S. 257, 273, 68 S.Ct. 499, 507, 92 L.Ed. 682 (1948)).[10] Providing the defendant with notice of the nature of the contempt proceedings and allowing him to prepare a defense also may allow the defendant to inform the court of extenuating circumstances that mitigate the effect of failure to comply with an order of the court. *See Taylor v. Hayes,* 418 U.S. 488, 499, 94 S.Ct. 2697, 273, 41 L.Ed.2d 897 (1974) ("contemnor might at least urge ... that the behavior at issue was not contempt but the acceptable conduct of an attorney representing his client; or, he might present matters in mitigation or otherwise attempt to make amends with the court").

2. Application of Principles to this Case

■ In light of these principles, the district court's summary imposition of criminal contempt sanctions on Mr. Simpson and Mr. Becker was inappropriate. Nothing in the proceedings of July 15, 1988 demonstrates a "compelling need for an immediate remedy" or shows that "time [was] of the essence." The district court acted not "to prevent a breakdown of the proceed-

ings," *Wilson,* 421 U.S. at 319, 95 S.Ct. at 1808,[11] but to punish, *post facto,* noncompliance with its order. When the district court acted, Mr. Becker and Mr. Simpson were before it. The district court was able to proceed with the show cause hearing and accomplish the business scheduled for that day. Moreover, while the court gave Mr. Becker some opportunity to explain his conduct and Mr. Simpson an even more limited opportunity, we cannot say that a more plenary hearing after an opportunity to prepare a defense would have been pointless. For instance, at oral argument before this court, Mr. Becker informed us that he advised his client not to attend the July 15 hearing because both he and his client had received death threats. A hearing would have allowed the court to explore whether Mr. Becker's fear for Mr. Simpson's security was well founded and whether, under the circumstances here, it justified or mitigated Mr. Simpson's failure to come to the courtroom on July 15. After reviewing the record of the truncated exchange between the district court and the appellants, we cannot say that a fur-

**10.** *See also In re Oliver,* 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948):

> Except for a narrowly limited category of contempts, due process of law ... requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation. The narrow exception to these due process requirements includes only charges of misconduct, in open court, in the presence of the judge, *which disturbs the court's business,* where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent "demoralization of the court's authority" before the public.

333 U.S. at 275, 68 S.Ct. at 508 (emphasis supplied); *id.* at 274, 68 S.Ct. at 508 (contempt proceedings without notice and hearing sometimes justified because "a court's business [can] not be conducted unless it [can] suppress disturbances within the courtroom by immediate punishment") (such departures "from the accepted standards of due process" should not be expanded beyond "the suppression and punishment of

the court-disrupting misconduct which alone justifie[s] its exercise"); *see also United States v. Lumumba,* 741 F.2d 12, 16 (2d Cir.1984) ("[E]xcept for those contempts committed in the presence of the court, due process requires that the accused 'be advised of the charges and have a reasonable opportunity to meet them by way of defense or explanation.'") (quoting *Cooke v. United States,* 267 U.S. 517, 537, 45 S.Ct. 390, 395, 69 L.Ed. 767 (1925)); *id.* (where order in the court and the dignified maintenance of the processes of the court require it, due process rights may be "sacrificed"; "where this interest need not be vindicated, the least possible power to accomplish the ends perceived consists of a show cause or other notice to the accused with a chance for him to be heard").

**11.** *See United States v. Brown,* 791 F.2d 577, 578 (7th Cir.1986) (summary proceedings appropriate where contemnor disrupted ongoing proceedings; "Brown's conduct led the court to call off the trial, sending prosecutor and witnesses home. This is a serious interference with the process of justice.... Brown's obstreperous conduct brought this trial to a halt."); *compare Moschiano,* 695 F.2d at 252 (summary disposition inappropriate where there was no real threat that contempt would recur and trial was delayed only for the period of a brief sidebar).

ther hearing is unnecessary. As the Supreme Court explained in *Harris:*

> Such notice and hearing serve important ends. What appears to be a brazen refusal to cooperate with the grand jury may indeed be a case of frightened silence. Refusal to answer may be due to fear—fear of reprisals on the witness or his family. Other extenuating circumstances may be present. We do not suggest that there were circumstances of that nature here. We are wholly ignorant of the episode except for what the record shows and it reveals only the barebones of demand and refusal. If justice is to be done, a sentencing judge should know all the facts.... [A] hearing and only a hearing will elucidate all the facts and assure a fair administration of justice. Then courts will not act on suspicion or surmise but will come to the sentencing stage of the proceeding with insight and understanding.

382 U.S. at 166–67, 86 S.Ct. at 355–56 (footnote omitted); *see also United States v. Baldwin,* 770 F.2d 1550, 1555 (11th Cir. 1985), *cert. denied,* 475 U.S. 1120, 106 S.Ct. 1636, 90 L.Ed.2d 182 (1986) ("[T]he failure to appear ordinarily does not subject one to summary contempt.... The protection of Rule 42(b) is usually necessary because the judge normally does not know why the alleged contemnor did not appear.") (citations omitted).[12]

### C. *Recusal*

■ The appellants also contend that the presiding district judge should have recused himself "due to personal bias and prejudice." Appellants' Br. at 22. This argument is without merit. In the context of a contempt hearing, recusal is required [w]here the allegedly contumacious conduct so provokes the judge reviled that

he or she becomes personally embroiled in the controversy, or where there is such a likelihood of bias or the appearance of bias that the judge is unable to hold the balance between vindicating the interests of the court and the interests of the accused, or where the conduct involves an insulting attack on the integrity of the judge....

*In re Jafree,* 741 F.2d at 137 (citing *Taylor,* 418 U.S. at 501, 94 S.Ct. at 2704; *Spruell v. Jarvis,* 654 F.2d 1090, 1095 (5th Cir. 1981); *In re Dellinger,* 461 F.2d 389, 394 (7th Cir.1972)). None of the factors requiring recusal are present in this case.

### Conclusion

We cannot say that the situation here, where the district court elected *post facto* criminal contempt sanctions at a point where the disobedient conduct had ceased and the proceedings could continue, falls within the narrow strictures of Rule 42(a). Therefore, we are constrained to vacate the judgments of contempt and to remand the case for further proceedings. We hardly need to add that our decision ought not be construed as a vindication of the appellants' conduct. We hold only that, in dealing with the situation before it, the district court selected an inappropriate procedure. Furthermore, we stress that our decision ought not be construed as constricting the authority of the trial court to employ its summary contempt powers whenever "there is a 'compelling reason for an immediate remedy' or time is of the essence." *Moschiano,* 695 F.2d at 251 (quoting *Wilson,* 421 U.S. at 318–19, 95 S.Ct. at 1807–08).

Accordingly, the judgments of the district court are vacated and the cases are remanded for further proceedings in con-

---

**12.** In *Baldwin,* the contemnor, an attorney, informed the district court in advance that he intended to violate an order requiring him to be in court to represent his client on a religious holiday. Because the contemnor had already informed the court that he was refusing to obey its order and would not be present as required, and because the contemnor's absence caused

the ongoing trial to come to a halt and greatly inconvenienced, at considerable public expense, the participants in the trial, the court in *Baldwin* concluded that "the circumstances in this case render[ed] Rule 42(a) an appropriate method of punishing appellant's subsequent failure to appear." 770 F.2d at 1556. Similar circum-

formity with this opinion.[13]  Circuit Rule 36 shall not apply on remand.

IS IS SO ORDERED.

stances, however, are not present in the case at hand.

**13.**  The district court is also free to explore, if it wishes, the possible applicability of 28 U.S.C. § 1927 to the actions of Mr. Becker.  *See gener-* *ally Walter v. Fiorenza,* 840 F.2d 427, 433 (7th Cir.1988).  Section 1927 provides only for the imposition of sanctions against counsel.  *Or-* *dower v. Feldman,* 826 F.2d 1569, 1573 (7th Cir.1987).