**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**Arnold KIMMES, et al., Defendants.**

**No. 89 C 5942.**

United States District Court, N.D. Illinois, E.D.

Feb. 25, 1991.

tend any of the hearings in this case but is represented by counsel. In response to Quinn's surreptitious movement of funds in violation of the Order, SEC has asked that Quinn be held in contempt.[2] For the reasons set forth in this memorandum opinion and order, this Court finds that Quinn may not be tried for criminal contempt until he is able to appear in person for a hearing.

Anita Nagler, Gregory P. Von Schaumburg, S.E.C., Chicago, Ill., for plaintiff.

Richard Ben–Veniste, Peter D. Isakoff, Weil, Gotshal & Manges, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

On August 3, 1989 the Securities and Exchange Commission ("SEC") brought this action against 14 individuals and two corporations, charging a large-scale securities fraud in the marketing and sale of low-priced securities (so-called "penny stocks"). This opinion deals with the legal issues that have arisen out of the alleged failure of defendant Thomas Quinn ("Quinn") to obey this Court's September 1, 1989 Order of Preliminary Injunction and Other Equitable Relief (the "Order").

Quinn was incarcerated at the Maison d'Arrêt de la Santé in Paris, France before this case was filed and is still in custody there. He is currently unavailable[1] to at-

### Procedural Background

SEC coupled its initiation of this action with a motion seeking to prevent Quinn and four other defendants from dissipating, secreting or otherwise placing their assets outside of the jurisdiction of this Court. On August 4, 1989 this Court issued a temporary restraining order ("TRO") that among other things froze the funds and other assets of those defendants. After the TRO had been given the one brief extension permitted by Fed.R.Civ.P. 65(b), on September 1, 1989 this Court entered the Order against Quinn.[3] At issue now is Quinn's alleged violation of the paragraph of the Order that froze his assets:

9. Defendant Quinn, his agents, servants, employees and attorneys and those persons in active concert or participation with any of the foregoing who receive actual notice of this Order by personal service or otherwise, and each of them, are preliminarily restrained and enjoined from directly or indirectly transferring, selling, assigning, pledging, dissipating, concealing or otherwise disposing of in any manner, any funds, assets or other property, wherever located, be-

---

1. SEC has stated in its Oct. 9, 1990 P.Mem. 3 that it believes that France will not extradite Quinn for a contempt charge. Article II of the United States–France Extradition Convention of Jan. 6, 1909 (37 Stat. 1526, 1527–28) as amended Feb. 12, 1970 (22 U.S.T. 407, 409) does not include criminal contempt as one of the crimes for which extradition "shall be granted." It also appears that France would not extradite Quinn during the pendency of the proceedings against him under the laws of France (see *id.* art. IX).

2. Two other motions remain pending:
   (1) SEC's motion that the Order be modified to require Quinn to pay $14.2 million into the Court's registry and
   (2) Quinn's motion that the Order be modified to allow the release of $50,000 to enable

him to pay attorneys' fees for services rendered by his lawyers from April 1 through October 31, 1990.
In *SEC v. Kimmes,* 1990 WL 208666, 1990 U.S. Dist LEXIS 16166 (N.D.Ill.) ("November 29, 1990 Opinion"), this Court continued those motions under circumstances briefly described in the Appendix to this opinion.

3. At the time this Court entered the Order, Quinn was the only defendant who posed a live issue in terms of further preliminary injunctive relief. All the other defendants against whom the TRO had been entered had either consented to preliminary injunctive relief or had defaulted.

longing to or in the possession, custody or control of defendant Quinn or his immediate family.

On January 25, 1990 SEC moved for an order to show cause, seeking to hold Quinn in civil contempt for violation of that provision of the Order. SEC pointed to Quinn's having caused the transfer of $75,000 about November 15, 1989—well after he had been made aware of the restrictions imposed by the Order [4]—from a brokerage account (which he maintained under an alias) in the United States to attorney Philippe Cywan ("Cywan") in the United Kingdom. Three months later SEC identified still another transfer of funds that Quinn had made in contravention of the Order's provisions in early February 1990.

SEC's motion for an order to show cause sought a finding of civil contempt against Quinn. But its initial January 25, 1990 filing, which comported with the civil contempt concept by asking for coercive relief (January 25, 1990 P. Mem. 6), also said (*id.* n. 1) (citation omitted):

Defendant Quinn's contempt may also be criminal and nothing in the SEC's motion should be read as precluding his prosecution for criminal contempt.

It was clear from both the nature of the relief requested and the type of violations alleged that—with the exception of the possibility of a limited remedial fine discussed below—there are only two remedies that may be available to the Court: a monetary penalty or a prison term. Both are designed to punish the defendant, although each can have an ancillary effect of deterrence. Because both of those potentially available remedies involved the prospect of punishment, in the August 21, 1990 Opinion at 701 this Court ordered Quinn and his counsel to show cause why Quinn should not be held in criminal contempt. Quinn has responded through his counsel, objecting in principal part that Quinn has an absolute right to be present at the contempt hearing.[5] Before that issue may be addressed directly, it is useful to take a brief look at some underlying contempt-of-court principles.

### Contempt of Court

■ Both parties have submitted memoranda addressing both civil and criminal contempt. Although this Court directed the parties to focus on the prospect of criminal contempt,[6] the possibility of civil contempt sanctions for Quinn remains. This opinion will not deal with that issue, in part because SEC has decided to delay any action on its motion for civil contempt until the issue of criminal contempt is resolved.[7]

---

**4.** Another earlier opinion in this case, 753 F.Supp. 695, 701 (N.D.Ill.) ("August 21, 1990 Opinion"), stated:

At the time that Quinn diverted $75,000 to his own ends in flagrant contravention of the Order, he was not only already represented by [Richard] Ben–Veniste [the Washington, D.C. lawyer who has represented Quinn from the outset of these proceedings] but had actually sought and obtained through Ben–Veniste a modification of the Order—the issuance of this Court's October 3, 1989 order authorizing payment of $12,000 to enable Ben–Veniste to travel to Paris to counsel with Quinn about this case. Quinn unquestionably knew of the Order; he and his lawyer knew how to seek relief from the Order from this Court; and in fact his lawyer's September 25, 1989 affidavit and contemporaneous memorandum seeking the release of $12,000 from the flat-out prohibition imposed by the Order first sounded the now-familiar tocsin of due process of law as the predicate for obtaining such relief (Sept. 25, 1989 Mem. at 3).

**5.** Another issue addressed by the parties is whether Quinn's counsel may be called upon to testify as to what he told Quinn about the Order. Because this opinion holds that no hearing may commence without Quinn present, that issue need not be resolved at this time. But it should nevertheless be given further careful consideration by the parties in the immediate future—see n. 18.

**6.** As stated in the August 21, 1990 Opinion at 701 n. 16:

Because of (1) the likelihood that Quinn's conduct may trigger a criminal contempt holding and (2) the further likelihood of reinstatement of the Order even if it were to be vacated ... there seems no need to resolve the issues as to civil contempt.... [I]t would seem that complete relief could be afforded via a ruling of criminal contempt plus appropriate sanctions.

**7.** See Sept. 7, 1990 P.Mem. 11–12:

Plaintiff, without waiving any rights, agrees to hold in abeyance any further action on the question of civil sanctions until criminal sanctions are imposed against Defendant Quinn.

More importantly, however, an analysis of this case in terms of the distinctions between the two forms of contempt (although not always a bright line) clearly discloses that with the exception of a possible remedial fine, the only kind of contempt that is relevant to the issue of Quinn's past violations of the Order is criminal.

*Hicks v. Feiock*, 485 U.S. 624, 631–32, 108 S.Ct. 1423, 1429–30, 99 L.Ed.2d 721 (1988) explains the difference between civil and criminal contempt:

> Instead, the critical features are the substance of the proceeding and the character of the relief that the proceeding will afford. "If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court." *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441 [31 S.Ct. 492, 498, 55 L.Ed. 797] (1911). The character of the relief imposed is thus ascertainable by applying a few straightforward rules. If the relief provided is a sentence of imprisonment, it is remedial if "the defendant stands committed unless and until he performs the affirmative act required by the court's order," and is punitive if "the sentence is limited to imprisonment for a definite period." *Id.*, at 442 [31 S.Ct. at 498.] If the relief provided is a fine, it is remedial when it is paid to the complainant, and punitive when it paid to the court, though a fine that would be payable to the court is also remedial when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order.

It can be seen from that explanation that any punishment for Quinn's alleged *past* violations necessarily comes within the ambit of criminal contempt. Because the Order merely requires Quinn to refrain from action, a coercive penalty could never be purged by Quinn by any action on his part. Indeed, so far as this Court is aware, Quinn is complying fully with the Order at this very moment and thus could not be coerced into any greater degree of compliance.[8] Accordingly no coercive penalties are proper in this case. Any punishment for *past* acts of disobedience can be imposed only through a criminal contempt procedure. Only one remedial form of relief might perhaps be granted: a fine for the damages, if any, occasioned by Quinn's prior disregard of the Order.[9] In the latter respect *Gompers*, 221 U.S. at 443–44, 31 S.Ct. at 499 (citations omitted) is directly on point:

> In this case the alleged contempt did not consist in the defendant's refusing to do any affirmative act required, but rather in doing that which had been prohibited. The only possible remedial relief for such disobedience would have been to impose a fine for the use of complainant, measured in some degree by the pecuniary injury caused by the act of disobedience.

While civil contempt is primarily remedial, criminal contempt is used primarily to vindicate the court's authority by punishing those who refuse to obey its orders. *Gompers, id.* at 443, 31 S.Ct. at 498–99 explained, however:

> It is true that either form of [sanction] has also an incidental effect. For if the case is civil and the punishment is purely remedial, there is also a vindication of the court's authority. On the other hand, if the proceeding is for criminal contempt and the [sanction] is solely punitive, to vindicate the authority of the law, the complainant may also derive some incidental benefit from the fact that such punishment tends to prevent a repetition of the disobedience. But such indirect consequences will not change [a

---

**8.** This should not be misunderstood as a *holding* on this Court's part. It is rather that (as Fed.R. Evid. 404(b) teaches) this Court will not assume any further violations from the existence of earlier noncompliance by Quinn.

**9.** See, e.g., *Connolly v. J.T. Ventures*, 851 F.2d 930, 932–33 (7th Cir.1988) and *United States v.*

*United Mine Workers of America*, 330 U.S. 258, 303–04, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947). That subject—including such issues as whether SEC could seek such a fine not for its own benefit but for the benefit of defrauded investors—need not be addressed until such time as SEC renews its motion.

sanction] which is merely coercive and remedial, into that which is solely punitive in character, or *vice versa.*

Such incidental remedial effects of a criminal contempt punishment might well be welcome in this case, but it remains true that the primary reason for any court (including this one) to exert its contempt power is to ensure that parties respect its authority. Here the only problem is that this Court's ability to enforce its authority over Quinn is temporarily limited because of his absence—a matter that becomes clear on examination of the procedure for criminal contempt.

### Criminal Contempt Procedure

Fed.R.Crim.P. ("Rule") 42(b) defines the required procedure in criminal contempt cases:

> (b) **Disposition Upon Notice and Hearing.** A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court or, on application of the United States attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order for arrest. The defendant is entitled to a trial by jury in any case in which an act of Congress so provides.... Upon a verdict or finding of guilt the court shall enter an order fixing the punishment.

Two rights guaranteed by that Rule (and indeed by the Due Process Clause) are relevant here: (1) a notice through an "order to show cause or an order for arrest" and then (2) a hearing.

There is no need to pause long on the first of those rights. To avoid any possible objection by Quinn that SEC's motion has not itself satisfied the notice requirement,[10] while at the same time avoiding any cause for concern as to SEC's serving as prosecutor here,[11] this Court requests that the United States Attorney for this District act as the prosecutor with respect to Quinn's alleged acts of criminal contempt. As and when the prosecutor applies for an order to show cause, this Court will respond accordingly.

It is Quinn's second right—the right to a hearing—that currently presents the main difficulty in this case. That right is uncontroverted. *SEC v. Simpson,* 885 F.2d 390, 396 (7th Cir.1989) (citations and footnote omitted) teaches:

> Rule 42(a) provides that criminal contempt may be punished summarily if the court certifies that it saw or heard the contumacious conduct and that the contempt was committed in the actual presence of the court. In all other cases, the court must comply with the "normal procedure," specified in Rule 42(b), which requires that the defendant be provided with notice and a hearing.

Because he continues to languish in custody in France, Quinn is unable to be present at any hearing here.

### SEC's Proposed Procedure

To address the problem of Quinn's absence during any contempt hearing that might be held while he is in French custody, SEC has made what appears at first glance to be a reasonable suggestion: It

---

**10.** As this opinion has already made plain, Quinn and his counsel are of course fully apprised of what is at issue here. But given the fact that the matter cannot proceed now anyway, no harm other than minimal inconvenience is occasioned by calling for a fresh notice in specific reliance on, and compliance with, Rule 42(b).

**11.** Contrast the absolute bar pronounced in *United States ex rel. SEC v. Carter,* 907 F.2d 484 (5th Cir.1990) with the more limited constraint

described in *FTC v. American National Cellular,* 868 F.2d 315, 318–20 (9th Cir.1989). Of course the appointment of counsel other than SEC's own lawyers as prosecutor does not preclude SEC from providing assistance to whoever is assigned to handle the case—indeed, it would seem constructive for SEC to do so. At the very least SEC could provide the designated prosecutor with the information as to the alleged violations and keep the prosecutor abreast of Quinn's availability for trial.

proposes (Oct. 9, 1990 P.Mem. 3–4) that all witnesses (including Quinn himself) be interrogated via videotape in France in Quinn's presence. Then the tape could be edited to delete any objectionable material and shown to the jury or court, as the case may be. Quinn would be allowed to communicate to the court by means of a videotape or possibly through a videolink.

SEC has wrestled with the problem of Quinn's unavailability at trial as if it were essentially a Confrontation Clause problem (though SEC itself recognizes that is only one aspect of the issue). In the context of the Confrontation Clause, no hard and fast rules demand face-to-face contact in every instance. There are narrow exceptions to the right of confrontation (see, e.g., *Maryland v. Craig*, —— U.S. ——, 110 S.Ct. 3157, 3170, 111 L.Ed.2d 666 (1990)), but all those exceptions arise in the context of the physical absence of a witness to avoid a face-to-face confrontation with the accused—not the other way around, involving the absence of the accused from the trial itself.

SEC compares the issue here to that in *United States v. Kelly*, 892 F.2d 255, 262–63 (3rd Cir.1989), which allowed the use of deposition testimony of a witness where defendants had "a reasonable opportunity to take part in this cross-examination." But *Kelly*, having been decided solely under the rules of evidence and the Sixth Amendment's right of confrontation, is inapposite to this case. There the problem was simply whether the deposition of a witness could be admitted at the trial, while here the issue is whether defendant himself can be absent from the trial. If Quinn were to decide to answer questions and thus serve as a witness, *Kelly* could provide some support for admitting a video-

taped deposition of Quinn at trial. But that does not resolve the question of Quinn's presence at the actual hearing. Even if *all* witnesses were to be videotaped, it would remain true that Quinn still has a right to be present at his trial when the videotapes are played.

Notwithstanding its own arguments for using a variant on a Confrontation Clause exception, SEC recognizes that Quinn's absence does not directly present a Sixth Amendment problem.[12] It also correctly says that the right to confrontation is similar to but not the same as the right to be present at one's own trial.[13] Nevertheless the procedure offered by SEC addresses only the Confrontation Clause concerns as to witness testimony (assuming, that is, that the Confrontation Clause applies to contempt proceedings). But SEC's submission fails to address the right of Quinn to be physically present at his own trial,[14] not just during the taking of testimony that would later be used at his trial.

*Snyder v. Massachusetts*, 291 U.S. 97, 107, 54 S.Ct. 330, 333, 78 L.Ed. 674 (1934) emphasized the common misunderstanding about the distinction between the rights of confrontation and presence:

> Confusion of thought will result if we fail to mark the distinction between requirements in respect of presence that have their source in the common law, and requirements that have their source, either expressly or by implication, in the federal constitution. Confusion will result again if the privilege of presence be identified with the privilege of confrontation, which is limited to the stages of the trial when there are witnesses to be questioned.

In this instance Quinn's right to be present is the central issue, and it is one that must

**12.** SEC's Oct. 9, 1990 P.Mem. 6 cites *United States v. Bukowski*, 435 F.2d 1094, 1101 (7th Cir.1970) for the proposition that criminal contempt procedures are guided by general due process considerations, not by the specific criminal trial rights contained in the Fifth and Sixth Amendments.

**13.** Its same memorandum referred to in n. 12, *id.* (citation omitted) states:

> However, while the Confrontation Clause does reflect a preference for face-to-face confrontations at trial between accused and adverse witnesses, that preference is not absolute and, further, it is not to be confused with the privilege to be present at trial.

**14.** SEC's same memorandum cited in nn. 12 and 13, *id.* at 7 n. 7 refers to Rule 43 in a footnote, but it inexplicably fails to address whether that Rule requires Quinn's presence.

be dealt with to determine whether this Court may now hold a hearing on the contempt charges against Quinn. As the following discussion reflects, that may not be done while Quinn remains in French custody.

### Quinn's Right To Be Present

In a federal criminal trial, defendant's right to be present is grounded in three primary sources: the Sixth Amendment, the Fifth Amendment and Rule 43(a). It has already been explained that the Sixth Amendment's Confrontation Clause problems might be resolved by the videotaping procedure suggested by SEC. But the due process problems would remain. *United States v. Gagnon,* 470 U.S. 522, 526, 105 S.Ct. 1482, 1484, 84 L.Ed.2d 486 (1985) (per curiam) (citations omitted) explains:

> The constitutional right to presence is rooted to a large extent in the Confrontation Clause of the Sixth Amendment, but we have recognized that this right is protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him. In *Snyder v. Massachusetts,* 291 U.S. 97 [54 S.Ct. 330, 78 L.Ed. 674] (1934), the Court explained that a defendant has a due process right to be present at a proceeding "whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge.... [T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." *Id.,* at 105–106, 108, 54 S.Ct. at 332, 333.

As that last clause in the *Gagnon* quotation from *Snyder* indicates, the due process right to be present is not absolute. In that respect *Kentucky v. Stincer,* 482 U.S. 730, 745, 107 .S.Ct. 2658, 2667, 96 L.Ed.2d 631 (1987) teaches:

> [A] defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome

if his presence would contribute to the fairness of the procedure.

There are many stages of a criminal contempt trial at which defendant's presence "would contribute to the fairness of the procedure." For example (as SEC itself recognizes) Quinn has a right to a trial by jury because the potential penalty he faces (whether in terms of imprisonment or fine) places the alleged contempt into the category of serious infractions rather than petty offenses (see *Bloom v. Illinois,* 391 U.S. 194, 209–11, 88 S.Ct. 1477, 1486–88, 20 L.Ed.2d 522 (1968) and *Taylor v. Hayes,* 418 U.S. 488, 495–96, 94 S.Ct. 2697, 2701–02, 41 L.Ed.2d 897 (1974); cf. *Baldwin v. New York,* 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970)). SEC does not specify what penalty it would seek if it were appointed as prosecutor for the contempt charge, but it suggests that the penalty should be relatively severe,[15] thus requiring a jury.

If Quinn's contempt hearing did indeed require jurors, his presence would surely appear to be necessary from the moment the voir dire of prospective jurors begins until the reading of the verdict. For example, *Larson v. Tansy,* 911 F.2d 392, 395, 396 (10th Cir.1990) has said in the context of a criminal trial:

> [W]e hold that defendant's presence in the courtroom during the instructing of the jury, closing arguments, and the rendering of the verdict would not have been useless.

> \* \* \* \* \* \*

> Based on defendant's possible assistance to counsel and his missed opportunity to exert psychological influence on the jury, we hold that defendant's absence from the courtroom at critical junctures in his trial violated his due process rights.

And the just-discussed right to be present during any aspect of jury participation in the trial is but one example of the many occasions at which it might be constitutionally mandated for Quinn to have the oppor-

---

**15.** Sept. 7, 1990 P.Mem. 5 n. 5 states:

Plaintiff does note that in view of the defendant's use of aliases, and his propensity to

undermine the protective goal of the freeze order by moving assets, any fine would have to be significant to have the desired effect....

tunity to contribute personally to his defense.

True enough, although the due process right to be present at one's own trial applies in all criminal cases, it is unclear whether the identical right also extends to criminal contempt hearings. At first glance it is apparent that criminal contempt hearings are not identical in all respects to a criminal trial. Nevertheless many—though not necessarily all—of the same procedural safeguards apply. *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 798–99, 107 S.Ct. 2124, 2133, 95 L.Ed.2d 740 (1987) (citations omitted) summarized the basic protections afforded in criminal contempt hearings:

> [T]his Court has found that defendants in criminal contempt proceedings must be presumed innocent, proved guilty beyond a reasonable doubt, and accorded the right to refuse to testify against themselves; must be advised of charges, have a reasonable opportunity to respond to them, and be permitted the assistance of counsel and the right to call witnesses; must be given a public trial before an unbiased judge; and must be afforded a jury trial for serious contempts.

Beyond those broad procedural rights, the degree of correlation between rights mandated for criminal trials and those for criminal contempt hearings is not fully established. Indeed, the trial rights contained in the Sixth Amendment do not necessarily apply to contempt hearings. *Levine v. United States,* 362 U.S. 610, 616, 80 S.Ct. 1038, 1042, 4 L.Ed.2d 989 (1960) (citations omitted) explained:

> Procedural safeguards for criminal contempts do not derive from the Sixth Amendment. Criminal contempt proceedings are not within "all criminal prosecutions" to which that Amendment applies.

Instead the constitutional protection afforded defendants in federal criminal contempt proceedings stems solely from the Due Process Clause—as *Levine, id.* said:

> [P]etitioner's claim thus derives from the Due Process Clause and not from one of the explicitly defined procedural safeguards of the Constitution. . . .

Indeed, it might even be possible to develop an argument that there are some rights—perhaps even the right to be present—that *because* they have their source in the Sixth Amendment are not part of the due process requirements applicable to a contempt hearing.[16] But this Court need not indulge any such considerations—for as the next section explains, the existence of Rule 43 plus our Court of Appeals' invocation of that Rule in criminal contempt proceedings obviate the need to parse any possible distinction between the due process rights of criminal defendants and those of criminal contempt defendants.

### Rule 43

■ Rule 43(a) reads:

**(a) Presence Required.** The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.

That requirement that a defendant be present "at every stage of the trial" is intentionally more broad than any one of the constitutional rights to be present. *United States v. Reiter,* 897 F.2d 639, 642 (2d Cir.1990) (citations omitted) explains:

> In framing rule 43, Congress explicitly intended to codify existing law concerning an accused's constitutional and common law rights of presence at trial. Thus rule 43 encompasses the protections afforded by the sixth amendment confrontation clause, the due process clause of the fifth amendment, and the common law right of presence.

---

16. Cf. *Morfesis v. Dept. of Housing Preservation & Development of City of New York,* 733 F.Supp. 745 (S.D.N.Y.1990) (holding that due process did not require personal service in order for a *state* court to find a defendant, who was not present at any hearing, guilty in a prosecution for petty criminal contempt). It should be noted, however, that the classification as a petty offense meant there was no jury trial.

Thus *all* aspects of the defendant's right to be present are contained in the Rule. And in this Circuit Rule 43 has been expressly drawn upon in a criminal contempt proceeding—in fact, in one brought by SEC itself. *United States ex rel. SEC v. Billingsley*, 766 F.2d 1015, 1019 (7th Cir.1985) (citation omitted) stated this as the premise for its ensuing discussion of the more difficult questions of waiver and prejudice stemming from the contempt defendant's absence at one point in the jury deliberation process: [17]

It is clear that a criminal defendant has a right to be present during all stages of his trial—including the jury deliberations ... Fed.R.Crim.P. 43(a).

In sum, Rule 43(a) requires that Quinn be present at his trial on criminal contempt charges. There are only two exceptions:

1. if Quinn waives his right to be present at his trial by voluntarily absenting himself (*Taylor v. United States*, 414 U.S. 17, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973) (per curiam) and Rule 43(b) and (c)), or

2. if he is removed from the hearing on account of his disruptive behavior (*Illinois v. Allen*, 397 U.S. 337, 343, 90 S.Ct. 1057, 1060, 25 L.Ed.2d 353 (1970) and Rule 43(b)).

Neither of those applies or is likely to apply to the now-incarcerated Quinn.

### Conclusion

Because Quinn has the right under Rule 43(b) to be present at any hearing relating to criminal contempt charges against him, this Court rules that any hearing on any such charges is to be scheduled only after Quinn is released from French custody or is otherwise available to be personally present in court.[18] This Court hereby refers the matter of possible contempt to the United States Attorney for the Northern District of Illinois for the institution of appropriate proceedings.[19]

In the meantime, however, Quinn is reminded that he remains subject to the orders of this Court. Although this ruling means that he will not be tried in absentia while he is confined in France, he must remain mindful that any future violations of this Court's Order that might take place would also be potentially criminal in nature and therefore could also result in his being subjected to punishment in the form of either a prison term or a fine or both upon his release from custody.[20]

---

**17.** In *Billingsley* the defendant was convicted of criminal contempt for having violated a court-ordered injunction forbidding him from "offering or selling unregistered securities" (*id.* at 1017).

**18.** This deferral of such proceedings also carries with it the deferral of any decision on a number of substantive issues discussed in the submission by Quinn's counsel. In that respect, however, one issue already touched on by counsel bears further consideration. Quinn's Sept. 7, 1990 D.Mem. at 5–6 questions the statement in the Aug. 21, 1990 Opinion at 701 that "Quinn unquestionably knew of the Order" when he took $75,000 for his own use in violation of its terms. At this Court's request the parties have also briefed the question whether Ben–Veniste's communications with Quinn as to that subject are privileged from disclosure—a topic that as of this reading appears to call for a negative answer (1) in light of the limited *factual* nature of the subject at issue (as contrasted with any probing into Quinn's seeking of advice) and (2) even if the seeking of advice were involved, in further light of the "crime-fraud" exception to the privilege. To the extent that the issue of Quinn's knowledge may in fact make Ben–Veniste a probable witness, the potential disqualification of Ben–Veniste and all of his partners from trying the criminal contempt proceedings is something that they ought to focus on now rather than later. This District Court currently continues to operate under the ABA Code of Professional Responsibility (with its more stringent standards of disqualification of the lawyer-witness and all members of that lawyer's firm) rather than under the eased provisions of the Model Rules of Professional Conduct, although a change to the latter provisions is in the process of being considered even as this opinion is being written.

**19.** As n. 11 reflects, SEC is of course free to assist the prosecutor in his or her investigation and prosecution of Quinn.

**20.** Quinn should also understand that this opinion resolves only the procedural issue of when his *liability* for criminal contempt can be determined. If any such proceedings were to result in a guilty verdict and if he were then to receive a prison sentence for his violations, he would begin to serve that sentence in all events after his release from French custody.

## APPENDIX

As n. 2 to this opinion indicates, two aspects of civil relief related to the Order are still pending—one sought by SEC and the other by Quinn. To avoid interrupting the text of the opinion by an excursion into those byways, those motions are being treated briefly in this Appendix.

As a court of equity, this Court has the power to order Quinn to pay a certain amount into the court (see, e.g., *Continental Shipping Corp. v. Telfair International Corp.*, 1989 WL 75153, 1989 U.S.Dist. LEXIS 7428 (S.D.N.Y.); see also *J.I. Case Co. v. Borak*, 377 U.S. 426, 433–35, 84 S.Ct. 1555, 1560–61, 12 L.Ed.2d 423 (1964) (explaining the equity power of trial courts in securities cases)). *Freeman v. Fairlie*, 3 Meriv.R. 24, 29 (Ch. 1812) described the court's equity power in this area:

> Now, the general rule, as to bringing money into Court, may be stated thus; that the plaintiffs are solely entitled to the fund, or have acquired in the whole of the fund such an interest together with others, as entitles them, on their own behalf, and the behalf of others, to have the fund secured in Court.

See also Justice Story's 2 *Commentaries on Equity Jurisprudence as Administered in England and America* § 1159 (14th ed. 1918), citing *Freeman, id.*

*Freeman, id.* at 43–45 ordered a payment into the court on one claim that was certain. But it denied the motion that also sought such payment on a second claim, on the grounds that both the amount of that fund and the plaintiffs' right to it were unclear. In like manner, this Court decided in its November 29, 1990 Opinion at 7 that no action would be taken on either SEC's or Quinn's motion as long as the amount that can be paid into the court remains uncertain. Thus, until Quinn gives this Court the information necessary to fix the amount of the fund to be paid into court, he will remain under the more stringent Order and both SEC's and Quinn's motions for modification of the Order will remain in their present status—generally continued for later consideration.