[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-11921
Non-Argument Calendar
_____

D.C. Docket No. 5:15-cr-00055-MHH-HGD-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ERIC SLOAN PARKER,

Defendant,

LARRY MUNCEY,

Interested Party - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(June 15, 2017)

Before TJOFLAT, WILLIAM PRYOR, and JULIE CARNES, Circuit Judges.

PER CURIAM:

In this appeal, appellant Larry Muncey contests the district court's contempt order adjudging Muncey guilty of a Class B misdemeanor for failing to follow the court's sequestration order during a trial. Because there was sufficient evidence to support the district court's conclusion that Muncey violated the order, we AFFIRM the district court.

## I.    BACKGROUND

Eric Sloan Parker was a police officer with the Madison Police Department ("Madison") who was indicted by a federal grand jury for using excessive force against an individual in violation of federal law. In preparation for Parker's criminal trial, both federal prosecutors (the "Government") and Parker subpoenaed a number of Madison police officers, including the chief of police, Larry Muncey. The Government also sent notice that it intended to call Muncey as an expert witness to testify about Madison policies and officer training. Prior to trial, the prosecutor, Assistant United States Attorney Robert Posey, met with Muncey and explained to him that, because he had been designated as an expert witness for the Government, the latter would request that Muncey be excused from the witness sequestration rule.

2

On September 1, 2015, the Government and Parker requested that the district court issue a witness sequestration order pursuant to Federal Rule of Evidence 615,[1] but also requested that their respective experts be excused from the rule, meaning that these experts be allowed to remain in the courtroom throughout the trial.  The district court granted the parties' request and ordered witnesses to be sequestered.  Muncey was not in the courtroom when the district court entered this order, but the prosecutor spoke with Muncey again after the order was issued to tell him that because he was an expert witness, he would be allowed to sit in the courtroom despite the sequestration order.

By the conclusion of the its case-in-chief, the Government had decided that it was no longer going to use Muncey as an expert witness.  Because Muncey was still under a defense subpoena, counsel for defendant Parker therefore requested that Muncey be sequestered for the remainder of the trial.  Muncey was in the courtroom at the time this exchange occurred, and though he testified that he did not hear everything that was said between defense counsel and the judge, Muncey heard "something to the effect" that the sequestration rule was being invoked as to him, as well.  The Government's case agent then motioned for Muncey to leave the courtroom, so Muncey left and did not return.

---

[1]  Rule 615 provides:  "At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony. Or the court may do so on its own."  Fed. R. Evid. 615.

3

Once Muncey left the courtroom, he telephoned Captain Terrell Cook and requested that Cook go to the courtroom to observe the trial and "monitor the proceedings." However, when Muncey realized that Cook was also sequestered from the trial, he called Cook back and said, "If you're on the witness list, they won't let you in." Thus, the two men decided they would instead send Sergeant Lamar Anderson in their place to observe the trial and to keep them informed as to what the testimony was.

Cook told Anderson to keep Muncey updated during the trial, so Anderson emailed Muncey a timeline of the trial proceedings that he had been observing, including specific questions and answers from witness testimony. Muncey responded to Anderson's email saying: "Hey, buddy, you don't have to be so precise. We are reading the WHNT 19 blog. But it does not cover issues when the jury is out of the room or how officers are coming across. . . . We just need the important stuff, or embarrassing stuff for future correction."

On the same day, Corporal Wesley Grigsby testified in the Parker trial. The next day, when Grigsby was at the police station, Grigsby was called into Muncey's office. Muncey told Grigsby that he had been reviewing the news blogs on his computer and was disappointed in Grigsby's testimony because it made the department look bad. Grigsby told Muncey that he was very nervous and uncomfortable and that Muncey shouldn't take the blog as representing his

4

testimony verbatim.  Muncey responded "in a harsh tone," asking, "So they misquoted you, Grigsby?"

That evening, Muncey sent an email to three other officers who had testified in the Parker trial.  The email stated:

> According to WHNT 19 and the Huntsville Times, each of you testified under oath that Madison City Police policy supported Parker's use of force on Mr. Patel, and in that same situation, you would have done the same. Please provide me with a written statement explaining if these reports are correct; if they are not correct, explain what you did say.  Send the reports directly to me within twenty-four hours of the Parker case being decided, not before."

The following morning, Muncey sent the same email to three other officers who had also testified in the Parker trial.  A number of the officers feared repercussions and sought legal counsel in response.  Sergeant Marc Bray, who had not yet testified, heard about these emails prior to testifying and believed that he was going to have to explain his upcoming testimony to Muncey after the fact.

When the district court learned about Muncey's actions, it suspended the trial and held a fact-finding hearing about the possible sequestration violations. Following this hearing, the court concluded that there was probable cause to believe that Muncey willfully violated the Court's sequestration order, and it therefore ordered contempt proceedings against Muncey to determine his conduct

and any legal consequences.[2]  A contempt trial was held on April 12, 2016, in which Posey, Muncey, Cook, Grigsby, Anderson, and a number of other Madison officers testified.  Three days later, the district court announced its finding that the Special Prosecutor had proved beyond a reasonable doubt that Muncey was guilty of criminal contempt.  On July 21, 2016, the district court entered a final judgment adjudging Muncey guilty of a Class B misdemeanor violation of 18 U.S.C. § 401(3).[3]  The district court ordered that Muncey pay a $2,500 fine and attend liability-management training at his own expense.

## II.    DISCUSSION

On appeal, Muncey challenges whether there was sufficient evidence introduced at the contempt trial to prove beyond a reasonable doubt that he violated the district court's sequestration order.  "To support a § 401(3) conviction, 'the government must prove:  (1) that the court entered a lawful order of reasonable specificity; (2) the order was violated; and (3) the violation was willful.'"  *United States v. Bernardine*, 237 F.3d 1279, 1282 (11th Cir. 2001) (quoting *United States v. Maynard*, 933 F.2d 918, 920 (11th Cir. 1991)).  Muncey does not dispute that his actions actually violated the order, as required by the

---

[2]  Because the Government attorneys would likely be called as witnesses, the court also appointed a special prosecutor to prosecute the criminal contempt charges.

[3]  Pursuant to 18 U.S.C. § 401(3), "[a] court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."

6

second element.  Instead, he contends that there was insufficient evidence from which the district court, as the trier of fact, could have concluded that the order was reasonably specific and that Muncey's actions amounted to a *willful* violation of the order, as required by the first and third elements.

"In reviewing the sufficiency of the evidence in support of a finding of criminal contempt, 'we must determine whether the evidence, construed in the light most favorable to the government, would permit the trier of fact to find the defendant guilty beyond a reasonable doubt.'"  *Maynard*, 933 F.2d at 920 (quoting *United States v. Robinson,* 922 F.2d 1531, 1534 (11th Cir. 1991)).  We also apply "the familiar doctrine that the evidence is to be viewed, and all credibility issues to be decided, in the light most favorable to the charge, and all reasonable inferences drawn in support of a guilty verdict."  *In re E.I. DuPont De Nemours & Co.-Benlate Litig.*, 99 F.3d 363, 370 (11th Cir. 1996).  A conviction will be sustained "if there is substantial evidence to support it."  *Maynard*, 933 F.2d at 920 (internal quotation marks omitted).

## A.    Reasonably Specific Order

An order "meets the 'reasonable specificity' requirement only if it is 'clear, definite and unambiguous' in requiring the action in question."  *Bernardine*, 237 F.3d at 1282 (quoting *Bush Ranch Inc. v. E.I. DuPont De Nemours & Co.*, 99 F.3d 363, 370 (11th Cir. 1996)).  Nevertheless, this is a "factual inquiry that 'must be

evaluated in the context in which it is entered and the audience to which it is addressed.'" *Id.* (quoting *In re McDonald*, 819 F.2d 1020, 1024 (11th Cir. 1987)).

Although the district court did not spell out in detail the prohibitions inherent in its order, the court's sequestration order met the "clear, definite, and unambiguous" test. At the beginning of the Parker trial, the court ordered that witnesses be sequestered for the duration of the trial. Although Muncey was not present when this sequestration order was entered, the prosecutor testified that he explained to Muncey that Muncey was going to be excused from the rule so that he could be present in court and hear the testimony of the other witnesses. Muncey similarly testified that it was his understanding that he would be allowed to remain in the courtroom when the testimony began because "the rule" would not apply to him since he had been designated as an expert witness. Muncey also testified that, even though he had never read the rule or had it specifically explained to him, he "had an idea of sequestration" at the time the trial began.

After it became clear that the Government was not going to call Muncey to testify for its case-in-chief, defense counsel requested that Muncey be sequestered. Muncey was in the courtroom and heard defense counsel make this request. The district court then stated that if the Government was not going to present Muncey in its case-in-chief, "then he needs to be excused under the rule." At this time, the Government's case agent got up and motioned for Muncey to leave, so Muncey

8

walked out the door and left.  Muncey understood that he could not return to the courtroom after this had happened, "because of an instruction that the Court had given."  Based on the above, it was reasonable for the court to conclude that its sequestration order as to Muncey was clear, definite, and unambiguous.

This case does not present a situation like *United States v. Robinson*, 922 F.2d 1531, 1534 (11th Cir. 1991), where it was unclear whether an order had actually been imposed on the contemnor.  In *Robinson*, the Middle District of Florida's local rules prohibited speaking objections, but the rules also made clear that the prohibition was not mandatory and was subject to revision based on the preference of each judge.  Thus, the court could not conclude that the alleged contemnor "was on notice of the judge's rule against speaking objections," simply by the existence of an optional local rule.  *Id.*  Here, however, the court clearly ordered that Muncey be subject to the sequestration order, and understanding that he could not return to the courtroom after he left, Muncey was necessarily aware that the rule applied to him.

This conclusion finds further support when one considers "the audience to which [the order was] addressed."  *Bernardine*, 237 F.3d at 1282 (internal quotation marks omitted).  Muncey had served as a police officer for over twenty years, including time as a police chief where he had authority over the training and education of other police officers.  Other police officers from the Madison Police

9

Department called as witnesses during the contempt hearing testified that they knew what a sequestration order meant and generally required.  Muncey's extensive law enforcement experience reinforces the conclusion that the court's sequestration order was sufficiently specific.

The district court did not go into detail as to the specific requirements of the sequestration order nor explain what actions would or would not be prohibited by the Order.  But whether or not Muncey knew that his specific actions were in violation of the order is a separate question that we turn to now.

### B.    Willful Violation

Acknowledging that he violated the sequestration order, Muncey challenges only the district court's conclusion that he did so willfully.  A violation of an order is willful if it is "a deliberate or intended violation, as distinguished from an accidental, inadvertent, or negligent violation of an order."  *United States v. Straub*, 508 F.3d 1003, 1012 (11th Cir. 2007) (quoting *United States v. Baldwin*, 770 F.2d 1550, 1558 (11th Cir. 1985)).  "Under this standard of intent, behavior amounting to a reckless disregard for the administration of justice is sufficient to support a conviction when violative of a reasonably specific court order."  *United States v. Burstyn*, 878 F.2d 1322, 1324 (11th Cir. 1989).

When viewed in the light most favorable to the court's finding of fact, there was sufficient evidence from which the court could conclude that Muncey

deliberately and intentionally violated the order.  Although no one explained the specific contours of the rule to Muncey, he testified that he had a general idea of what sequestration was and understood that he was only able to remain in the courtroom initially because he had been designated as an expert witness.  Indeed, Muncey understood that after he had been excused from the courtroom, he was not supposed to return to the courtroom and would have had to specifically ask for permission to be let back in.  This comports with Posey's perception of Muncey as "someone who was familiar with the process [and] was knowledgeable of proceedings in general."

Further, it was reasonable for the court to infer from Muncey's extensive law enforcement experience that he would have known that his actions—sending another officer into the courtroom to monitor the proceedings and report back to him, emailing officers to request confirmation of testimony, and specifically confronting a witness (Grigsby) about testimony that displeased Muncey—would have been in violation of the sequestration order.  Indeed, other officers who testified at the contempt trial indicated such an understanding.  Captain John Stringer understood the rule to mean:  "No discussing the trial or trying to find out what other witnesses have said."  Sergeant Bray similarly understood that "the rule is invoked so that you can't hear testimony or discuss testimony with people so that you don't collude or have your own – your testimony influenced."  Sergeant

11

Anderson understood that the rule was invoked "to keep the purity of the case" and "keep testimony from being tainted." If Muncey understood the rule in the same way, he would have known that his actions were in direct violation of a rule preventing his contact with witnesses regarding the trial.

And, as it turns out, there was evidence suggesting that Muncey did know how the sequestration rule worked. Muncey understood that after he was asked to leave, he would not be allowed to return to the courtroom. Indeed, after Muncey was asked to leave, he called Captain Cook and asked him to sit in the courtroom for him, but then realized that because Cook was subpoenaed as well, he would not be allowed in either. Likewise, when Muncey emailed the other police officers requesting that they verify the accuracy of the emails, Muncey asked that that the reports be sent directly to him "within twenty-four hours of the Parker case being decided, not before." Muncey's recognition that Cook could not sit in on the trial and his request that the reports be sent *after* the trial concluded provided an evidentiary basis for the court to conclude that Muncey knew the general contours of the sequestration rule and that his actions were therefore in willful violation of the dictates of the sequestration order.

Nonetheless, Muncey argues that his actions were not meant to openly flout the district court's order, but instead were undertaken for a less nefarious purpose. To this end, Muncey contends that his observation of the trial and contact with

other subpoenaed witnesses was done to monitor the "decorum" of the officers and to prevent any further police department liability.[4]  As the trier of fact, the district court was free to discredit or discount these proffered explanations, but even if accepted as true, Muncey's motives for violating the order are of little moment. Instead, the district court could have reasonably concluded that two things were true at the same time:  (1) Muncey took his violative actions in order to limit the potential for future department liability, but (2) Muncey nonetheless knew that these actions were in violation of the district court's sequestration order.  Again, a violation is "willful" if the contemnor deliberately or intentionally violated the order, or recklessly disregarded the administration of justice.  *Straub*, 508 F.3d at 1012; *Burstyn*, 878 F.2d at 1324.  When "construed in the light most favorable to the government," *Maynard*, 933 F.2d at 920, there was sufficient evidence from which the district court could have concluded that Muncey knew that his actions would violate the court's sequestration order, but that he nevertheless chose to do

---

[4]  Muncey was worried about the testimony of police officers who had indicated that Parker acted properly and in accordance with the department's use of force policy.  As Muncey explained his thought process:

> After the officers testified in this court and it became public that they did not understand policy and procedures, and that they would act in the same manner in the same situation, that exposes city and themselves and all of their supervisors to huge liabilities -- failure to train, failure to act, failure to supervise.  Once an administrator knows of a problem, if they fail to take action to correct that problem, then you're open to a 1983 lawsuit.

Muncey had hoped to be able to confront any such allegations by showing that he was immediately taking corrective action when he learned of the officer's testimony.  It is not clear why he could not have waited until the trial was over to perform this post-mortem, however.

13

so.  Thus, the district court did not err by concluding beyond a reasonable doubt that the violation was "willful."

## III.    CONCLUSION

Because there was sufficient evidence to support the district court's conclusion that Muncey violated the sequestration order beyond a reasonable doubt, we **AFFIRM** the district court.

14